12371

VAN NESS v. SCHACHTE

(141 S. E., 721)

1. VENDOR AND PURCHASER—CONTRACT MUST BE RECORDED, AND POSSESSION UNDER UNRECORDED CONTRACT IS NOT NOTICE (CIV. CODE, 1922, § 5312).—An executory contract for the purchase of land or interest therein must be recorded under Civ. Code, 1922, § 5312, and, if not so recorded, possession will not operate as constructive notice thereof.

2. BOUNDARIES—ACQUIESCENCE IN ADJOINING OWNER'S MOVING FENCE WOULD NOT WORK ESTOPPEL TO DENIAL THAT FENCE AS RELOCATED WAS TRUE BOUNDARY AS AGAINST SUCH ADJOINING OWNER, THOUGH IT MIGHT AS TO INNOCENT PURCHASERS.—Where deed conveying lot to defendant's grantor, referred to a certain plat, as showing the shape, marks, dimensions, and boundaries of the property, which plat showed the southern boundary to be a straight line marked by a fence, *held* that plaintiff adjoining owner, in acquiescing in moving of such fence by defendant's grantor 12 inches south, was not

NOTE: Fence as evidence of agreement as to boundaries, see 4 R. C. L., 129; 1 R. C. L. Supp., 1068; 4 R. C. L. Supp., 252.

estopped from asserting that changed location of fence was not true boundary as against defendant's grantor, in absence of any claim of adverse possession, but this would not necessarily be true as respects innocent purchasers misled by plaintiff's acts to their injury.

3. BOUNDARIES—DISCREPANCY BETWEEN STRAIGHT BOUNDARY FENCE SHOWN IN PLAT AND EXISTING IRREGULAR FENCE HELD TO PRESENT JURY QUESTION AS TO TRUE BOUNDARY ASIDE FROM ESTOPPEL BY ACQUIESCENCE.—Where deed referred to certain plat as showing the shape, dimensions, and boundaries of the property conveyed, which plat showed the southern boundary to be a straight line marked by a fence, but an inspection of the premises by defendant on purchasing lot would have shown the apparent dividing line marked by irregular fence, and that eaves of plaintiff adjoining owner's house visibly extended about 12 inches north of house line, which was flush with fence, *held* that it was for jury to determine which was the true boundary after considering whether plaintiff was estopped to deny that present location of fence was true line because she had acquiesced in act of defendant's grantor in moving fence.

4. ESTOPPEL—ESTOPPEL IS USUALLY QUESTION FOR JURY.—The question of estoppel is usually one for the jury.

5. WITNESSES—EXCLUSION OF TESTIMONY AS TO CONVERSATION WITH DECEASED DEFENDANT, WITHOUT SHOWING TESTIMONY WAS OBJECTIONABLE ON STATUTORY GROUNDS, HELD ERROR (CODE CIV. PROC. 1922, § 708).—Exclusion of testimony of plaintiff's husband respecting statements concerning matter in controversy made to him by defendant who died before the trial, on ground that testimony was inadmissible, under Code Civ. Proc. 1922, § 708, *held* error, where it was not shown that the testimony was objectionable on any of the grounds or for any of the reasons stated in the statute.

Before BONHAM, J., Charleston, February, 1926. Reversed.

Action by M. Eloise S. Van Ness against Walter B. Schachte, deceased, revived in the name of Marion H. Schachte. Judgment for defendant, and plaintiff appeals. Reversed and remanded for new trial.

The following are the exceptions referred to in the opinion:

I. Because the Court erred in refusing to permit the witness, W. B. Van Ness, to testify as to statements made to

him by the defendant, Walter B. Schachte, since deceased, concerning the matter in controversy, and in holding said statements incompetent, whereas he should have held that such statements and conversation of the said defendant, Walter B. Schachte, since deceased, were relevant, competent, and admissible.

II. Because the Court erred in ordering a nonsuit in the cause, in that, the defendant having introduced on cross examination documentary evidence in support of the defense, an issue of fact had thereby been made for determination by the jury.

III. Because the Court erred in granting a nonsuit in this case, in that, under the testimony produced by plaintiff, there was sufficient evidence to go to the jury on the question of the true line between the lots of plaintiff and defendant.

IV. Because the Court erred in granting a nonsuit, in that in the testimony produced by plaintiff there was sufficient evidence to go to the jury on the question of trespass by defendant on the lands of plaintiff.

V. Because the Court in effect held that the unauthorized removal of plaintiff's fence by defendant's grantor, and the erection of a stone coping on the sidewalk, adversely affected plaintiff's title to her lot so as to give defendant, Schachte, title thereto, whereas he should have held that the defendant purchased and held title to no more land than was contained in the lot actually owned by his grantor.

VI. Because under the ruling of the Court the defendant is given title by adverse possession to a portion of the lot of plaintiff by virtue of a change in the line fence and the erection of a stone coping on the sidewalk by defendant's grantor, whereas he should have held that, under the law of South Carolina, title by adverse possession cannot be established, unless it appear that the premises claimed were held and possessed adversely by the claimant for the full term of not less than ten years.

VII. Because the Court erred in holding as follows: "Now Schachte comes along and buys from Doscher; he finds on the record the deed from Doscher calling for 28 feet—what he is buying; as a physical fact a line of 28 feet and a stone coping fixed in the sidewalk which coincides with this claim for 28 feet"; whereas he should have held that the metes and bounds of Schachte's lot (there being no claim of adverse possession) were to be determined by the deed from Doscher to Schachte and the rules of location for determining the same, and that Schachte could not rely alone on the stone coping in the sidewalk and on an apparent frontage of 28 feet, as against either his grantor or the plaintiff herein.

VIII. Because the Court erred in holding that, because the defendant, Schachte, found at the time of his purchase a stone coping fixed in the sidewalk, and a measurement of 28 feet on the ground to this coping, as the apparent front line, it was not incumbent upon said defendant to ascertain if that was the proper area; whereas he should have held that said defendant took only such area as was included in his deed of conveyance from Doscher, and that, when it appeared that adjoining lines were called for in this conveyance, the true boundary of the ajoining tract is the true dividing line between the lot conveyed and the adjoining lot.

IX. Because the Court erred in not holding that the lines of defendant's lot and the lines of the plaintiff's lot were to be determined by their respective deeds, and that it was incumbent upon defendant to ascertain the boundary line between his lot and that of plaintiff by measurements based on the boundaries given in his deed, and not on apparent boundaries indicated by a coping on the sidewalk, which was not a landmark.

X. Because his Honor erred in not holding that, inasmuch as it appeared from the testimony that the controversy between plaintiff and defendant was based solely on

an alleged deficiency in the frontage of the lot claimed by defendant, existence of a deficiency in defendant's front line measurements gave no right to defendant to encroach upon plaintiff's lot in order to make up the deficiency.

*Mr. Nath. B. Barnwell,* for appellant, cites: *Deeds must be recorded to give notice:* 82 S. C., 378; Secs. 5312, 5313, Code. *Construction of statute:* 2 Strob., Eq., 174, 187; 266 U. S., 548, 554; 246 U. S., 533, 543; 10 Cal., 189; 102 N. Y. S., 349; 203 Pac., 576. *Recording of contract of sale would not operate as notice; not included in recording act:* 39 S. C., 77; 1 Strob., 393; 10 Rich., Eq.; 149; 9 Rich., Eq., 483; 39 Cyc., 1732, 1733. *Possession of land by vendee under contract of sale operates as notice:* 22 S. C., 32, 38; 24 S. C., 285; 29 S. C., 147; 72 S. C., 235; 79 S. C., 286; 78 S. C., 499; 91 S. C., 7; 100 S. E., 533; 130 S. E., 210. *It is the business of one who buys land to know the surroundings:* 126 S. C., 180; 22 S. C., 32, 40; 20 R. C. L., 353, Sec. 15; 17 Wall., 1; 34 S. C., 571; 99 S. C., 310; 100 S. C., 273; 109 S. C., 533. *Construction of deed:* 2 Strob., 158; 131 S. E., 594, 598. *Adverse possession:* Sec. 320, Code. *Exclusion of testimony:* 47 S. C., 488; Sec. 708, Vol. 1, Code; 101 S. E., 133.

*Messrs. Buist & Buist,* and *S. Augustus Black,* for respondent, cite: *Testimony as to discussion of attempted compromise not admissible:* 80 S. C., 281; 102 S. C., 130; Sec. 708, Vol. 1, Code. *"Trusts":* 3 Pom., Eq. Jur. (3rd Ed.), 1997; Id., 2005. *Error to be reversible must be shown to be prejudicial:* 115 S. C., 262. *Facts not appearing in transcript of record will not be considered:* Supreme Court Rule 8. *Granting a nonsuit is not reversible error where verdict could properly be directed:* 4 C. J., 1021. *Construction of deed:* 2 Mill., Const. Rep., 98; Id., 115; 59 S. C., 115. *Elements of estoppel:* Pom., Eq. Jur. (3rd Ed.), Sec. 805. *Rules of location:* 1 Rich., 491; 9 C. J., 173.

February 9, 1928.

The opinion of thé Court was delivered by Mr. Justice Stabler.

This question arose out of a dispute with respect to a dividing line between two adjoining lots of land, located on the west side of Smith Street in the City of Charleston. The facts are somewhat involved, but we shall endeavor to make such statement of them as will give a clear understanding of the controversy.

The Enterprise Real Estate Company (hereinafter referred to as the Enterprise Company), from which both parties to this action claim as a common source of title, prior to 1912 bought several lots of land in the City of Charleston, which included the lots now owned by the plaintiff and the defendant, respectively. The lands purchased by the Enterprise Company were a part of the lands formerly owned by one Thomas Bennett. In 1855 Bennett had Charles Parker, City Surveyor, to make a plat of his lands, which is referred to herein as the Parker plat, and a sketch of which is shown below. We are concerned in the present case only with Lots 80, 81 and 82, as shown on this plat. It will be observed that these lots lie to the west side of Smith Street; their total frontage being shown thereon as 138 feet and 6 inches.

In 1870, in the settlement of the state of Thomas Bennett, William Hume, surveyor, at the direction of the Court, made a plat of the Bennett estate lands, which, while not so extensive, is the same as the earier plat of Parker.

Lot 80, known as the Parker lot, was conveyed to the Enterprise Company by Anna Parker, in 1907, in two parcels, described in her deed as having a frontage on Smith Street of 25 and 27 feet, respectively. Lot 81, with a frontage of 51 feet on Smith Street, and known as the Teskey lot, was conveyed to the Enterprise Company by Robert Teskey, by deed dated July 20, 1907. Lot 82, with a frontage of 36 feet on Smith Street, and known as the Kessel lot, was conveyed to the Enterprise Company by the devisees of John Kessel by deed dated March 31, 1910. These three lots were all the lands acquired by the Enterprise Company of the lands formerly owned by Thomas Bennett, as shown on the Parker plat. It will be observed that the aggregate frontage of these three lots on Smith Street, according to the conveyances to the Enterprise Company, is 139 feet, being 6 inches more than their aggregate frontage as shown on the Parker and Hume plats. This difference is found in the conveyance of Anna Parker to the Enterprise Company of lot 80, her deed to that company showing a frontage of that lot on Smith Street of 52 feet, while the Parker and Hume plats show it to be 51 feet and 6 inches.

The Enterprise Company, after acquiring these lots, conveyed to Mary M. Duffy, in 1911, the northern portion of lot 80, with a frontage on Smith Street of 35 feet, and referred to in the conveyance to her as being a part of the lot known as No. 80 on the Hume plat.

On October 8, 1912, the Enterprise Company had A. A. Everett, surveyor, to survey and make a plat of a portion of their remaining lands, beginning at the southern boundary line of the lot purchased by Mary M. Duffy. This plat

was recorded on October 8, 1912, and a sketch of it is shown below.

With respect to this plat, we are concerned only with lots 1 and 2 and the court fronting on Smith Street. Each of these lots is given a frontage of 28 feet and the court 14 feet, making a total frontage of 70 feet. The northern boundary line of lot 2 and the southern boundary line of lot 1 were each shown thereon as marked by a fence. The

aggregate frontage of these lots, Numbers 1 and 2, and the court, as shown on the Everett plat, taken with the frontage of the lot conveyed to Mary Duffy, would include, not only the entire frontage of the Parker and Teskey lots as shown on the Parker and Hume plats, but would extend two feet and six inches south beyond the northern boundary line of the Kessel lot (No. 82), taking a part of that lot. After the Everett plat had been made, the Enterprise Company conveyed to Carry M. Ostendorff, October 9, 1912, lot 2 as shown on that plat. In March, 1913, the Enterprise Company conveyed to Gustav Doscher lot 1, and in May, 1916, Doscher conveyed this lot to his wife. Its southern boundary line, which is the northern boundary line of the plaintiff's lot, is the one in dispute. In the conveyance to Gustav Doscher, the lot is described as "being a portion of the premises conveyed by Robert Teskey to Enterprise Real Estate Company by deed dated the 20th of July, 1907," and the southern boundary is given as "lands of Enterprise Real Estate Company, formerly of the estate of John Kessel." The Everett plat is referred to as showing the shape, marks, dimensions, and boundaries of the property conveyed.

At the time of the purchase of this lot by Doscher, in 1913, Mrs. Eloise Van Ness, the plaintiff in this action, was in possession, under a written contract for its purchase from the Enterprise Company, of the lot occupied by her, which lies to the south of, and adjoins, the Doscher lot. This contract was never recorded. The Enterprise Company conveyed the lot to Mrs. Van Ness March 11, 1916. The fence shown on the Everett plat as marking the southern boundary line of the Doscher lot was, according to the testimony, located on a line with the eaves of the Van Ness house about 12 inches north of the house line.

After Doscher purchased his lot, in repairing the line fence between the two lots to the rear of the plaintiff's

house, he placed the post at the house corner flush with the house, later building a garage which extended over a few inches on the land formerly on the Van Ness side of the fence. Subsequently, when the front line fence needed repairs, Doscher made them, having an understanding with Mrs. Van Ness that each party would pay one-half the cost. In making these repairs, he moved the fence south about 12 inches, and made it run flush with the Van Ness house. Afterwards, a coping was built in front of each house up to the fence; the Doscher coping being built about one year prior to the Van Ness coping.

Subsequently, in April, 1921, Walter B. Schachte, a former defendant in this case, purchased the Doscher lot. In 1924, when the front fence again needed repairs, Mrs. Van Ness desired to have it put back to its former place— about 12 inches north of the house line—but Schachte refused to recognize the old fence line as being the true boundary line between the lots, with the result that both parties employed surveyors, who failed to agree as to where the line should be placed, whereupon the parties resorted to litigation for a determination of their rights.

While litigation was pending, the defendant, Walter B. Schachte, died, and the action was revived in the name of Marion B. Schachte, his widow and devisee.

The plaintiff alleges trespass in the building of the fence and garage on her lands by Gustav Doscher, and in the continuing of same upon her lands by the defendant, who refused to remove them upon her request. The defendant denies the accuracy of the description of the property set out in the complaint; alleges that the plaintiff is a trespasser upon his land; and sets up a counterclaim for damages by reason thereof in the sum of $500.00. The case was heard before his Honor, Judge Bonham, with a jury, on February 8, 1926. At the close of plaintiff's testimony, the presiding Judge, on motion of the defendant, granted a nonsuit.

The plaintiff appeals to this Court by ten exceptions which will be reported.

The appellant contends that: (1) The written contract of sale of the Kessel lot between the Enterprise Company and herself was not required to be recorded, and (2) this being true, her possession of the lot under such contract was notice to Doscher of her right to an interest in the *entire* lot.

The case of *Epps v. Realty Co.,* 139 S. C., 481; 138 S. E., 297, is conclusive of the questions here raised. The Court in that case, speaking through Mr. Justice Blease, held that:

"An executory contract for the purchase and sale of land, or of any interest therein, being within the contemplation of Section 5312 [Code 3 of 1922] must be recorded as in said section provided, and, if not so recorded, possession will not operate as constructive notice thereof."

The testimony did not tend to show that Doscher had any actual notice.

It is urged further, however, that, even if possession by Mrs. Van Ness under an unrecorded contract of sale was not constructive notice to Doscher, and even if Doscher had no actual knowledge of the sale to Mrs. Van Ness, the nonsuit was improper, as Doscher was bound by the recitals in his own deed.

In the deed from the Enterprise Company to Doscher, the lot conveyed to him is thus described:

"Lot on west side of Smith Street, twenty-eight (28) feet in front, the same on the west or back line by one hundred three (103) feet nine (9) inches in depth, bounding north on a court hereinafter mentioned, east on Smith Street, south on lands of Enterprise Real Estate Company, formerly of the estate of John Kessel, west on the court hereinafter mentioned.

"The premises hereby conveyed being a portion of the premises conveyed by Robert Teskey to Enterprise Real

Estate Company by deed dated the 20th of July, 1907, and recorded in the R. M. C. office for Charleston County, in Book D-25, page 46, and having such shape, marks, dimensions and boundaries as are delineated on a plat thereof made by A. A. Everett, surveyor, on October 8th, 1912, recorded in said office in Book H-26, page 196."

In *Foy v. Neal,* 2 Strob., Law, 156, we find (quoting syllabus) :

"The rule of construction of a deed is, that all the parts of a description contained therein should be taken together, and no part suffered to control absolutely the others."

At the time of the execution of the Doscher deed, in 1913, the Enterprise Company was the owner, not only of the lot conveyed to Doscher, but also of the adjacent lands to the south, and Doscher was apprised of this fact by a recital in the deed itself; the grantor referring to these lands as the property formerly owned by John Kessel. Another recital in the deed apprised Doscher of the further fact that the lot conveyed to him was "a portion of the premises conveyed by Robert Teskey to Enterprise Real Estate Company." But, for the reasons which we shall give, we do not think that a decision as to the location of the true dividing line between the two lots rests upon a construction of these recitals.

The Doscher deed referred to the Everett plat, with date and place of record, as showing the shape, marks, dimensions, and boundaries of the property conveyed. On this plat the southern boundary of the lot conveyed to Doscher was shown to be a straight line running back from Smith Street 103 feet and 9 inches, and was marked by a fence. The testimony was that this boundary was on a line with the eaves of the house occupied by Mrs. Van Ness, and about 12 inches north of the house line. There can be no doubt, under the testimony given, that the southern boundary line of Doscher's lot, as fixed by the grantor at the time of the purchase by Doscher in 1913, and shown on the Everett

plat, with the fence located thereon, was accepted and recognized by Doscher as being the true southern boundary of his lot and the true dividing line between his lot and the lot to the south occupied by Mrs. Van Ness.

The Enterprise Company, when it sold to Doscher, fixed the southern boundary line of his lot as indicated above, and when, three years later, it conveyed to Mrs. Van Ness the remaining portion of its lands to the south of, and adjoining, the Doscher lot, it could only convey, regardless of the recitals in its deed to her, what it had left south of the southern Doscher line—a straight line about 12 inches north of the Van Ness house line—and Mrs. Van Ness could take no further north than such line. Hence, it is clear that, when Doscher put the fence south approximately 12 inches, he could not for that reason claim the land that was formerly a part of the lot occupied by Mrs. Van Ness thus inclosed on his side of the fence, except by adverse possession, and there is no such claim here. Under this state of facts, as between Doscher and Mrs. Van Ness, the true dividing line between the two lots would be the straight line about 12 inches north of the Van Ness house line, and, even if Mrs. Van Ness acquiesced in the moving of the fence to its present location, such acquiescence would not operate in favor of Doscher to estop her to claim that the present location of the fence is not the true boundary line.

But while Mrs. Van Ness would not be estopped in her claim as against Doscher, it does not necessarily follow that she would not be estopped as against one taking under Doscher, if such taker should be an innocent party misled by her acts to his injury—and the respondent contends that such is the case here. As has been pointed out, so far as the records disclosed at the time of the purchase of the lot by Doscher, the Enterprise Company owned the land adjoining on the south; the Everett plat, which was made by the Enterprise Company, was on record, showing the southern boundary line of Doscher's lot as a straight line marked by

a fence. Later, in 1916, a deed was made to Mrs. Van Ness by the Enterprise Company to the lot lying south of Doscher's and adjoining same. Mrs. Van Ness at that time had notice of the true dividing line between the two lots as shown on the Everett plat. Later, when the fence on this line was moved south about 12 inches by Doscher, Mrs. Van Ness apparently acquiesced therein, and later still a coping was built in front of each house up to the fence.

With this status prevailing, Schachte bought from Mrs. Doscher in 1921; and it is urged by the respondent that, under these circumstances, there would be no violence in a presumption that Schachte relied upon the visible evidences on the ground as to the true line between the lots, created with the acquiescence of Mrs. Van Ness in the removal of the fence by Doscher, the location of the fence after such removal tending to show that the lot purchased by him contained the area and measurements called for in the Doscher deed, with the markings of the southern boundary line by a fence as indicated on the Everett plat, and that Mrs. Van Ness is estopped from denying the present location of the fence as the true boundary.

The presiding Judge seems to have taken this view of the matter. In his order granting a nonsuit he said:

"I think the plaintiff has brought about her own unfortunate situation. I was impressed when the plaintiff and her husband were on the stand with that thought. They were in possession of this property before Schachte bought, under a written contract; Doscher came along and bought and put his deed of record. Now then, with Doscher in possession, and Van Ness in possession, the line is changed with the consent of the plaintiff. Now they say they did not suppose any claim would be made, but they did to all intents and purposes acquiesce. Now Schachte comes along and buys from Doscher; he finds on the record the deed to Doscher calling for 28 feet (what he is buying as a physical fact is a line of 28 feet), and a stone coping fixed on the

sidewalk which coincides with this claim for 28 feet. I don't think it was incumbent for Schachte to go and find out if that was the proper area. I don't think the plaintiff can maintain the action, and the nonsuit is granted."

The appellant urges, however, that, when Schachte made his purchase, even though he relied upon the Everett plat, in connection with the apparent visible evidences on the ground of the acquiescence of Mrs. Van Ness in the removal of the fence to its present location, he had notice of the inaccuracies of such plat. She points ont that the plat contained no marks of location, except that the lands shown thereon face on Smith Street, with a frontage of 70 feet, and are bounded on all other sides by a fence. She further argues that the southern boundary line of the Doscher lot as shown thereon was a straight line, not an irregular, jagged line, such as the fence line existing when the respondent made his purchase from Mrs. Doscher, and that these variances between the dividing line as shown on the Everett plat and the fence line actually visible on the ground when Schachte made his purchase, were sufficient to put him on notice that the present location of the fence was not the true southern boundary line of the lot he purchased.

It appears to us that there is merit in this contention. An examination of the Everett plat would have shown Schachte that the southern boundary line of the Doscher lot was a straight line, and marked by a fence thereon; while an inspection of the premises would have shown him that the apparent dividing line, marked by a fence, as shown on the ground, was not a straight line, but, on the contrary, was an irregular one. Further, if Schachte, at the time he purchased the Doscher lot, considered certain visible evidences on the ground as tending to show that the fence as then located, flush with the body of the Van Ness house, marked the boundary line between the two lots, he should have considered also the fact that the eaves of the Van

Ness house visibly extended about 12 inches north beyond the house line, as tending to show the contrary.

The question of estoppel is usually one for the jury, and, under the circumstances here shown, we cannot say, as a matter of law, that the presumption arises that the true boundary line between the two lots is not other than the present location of the fence. We think that, under the testimony, a question of fact was made for the jury, to wit, whether the true dividing line between the two lots is (1) the one shown on the Everett plat as the southern boundary line of lot No. 1, which is approximately 12 inches north of the Van Ness house line; or (2) the present location of the fence on the ground. The reaching of a verdict will involve the determination of the question as to whether Mrs. Van Ness is estopped to deny that the present location of the fence is the true dividing line.

The appellant, by her first exception, complains of error on the part of the Circuit Judge in refusing to allow the witness, W. N. Van Ness, the husband of the plaintiff, to testify as to statements made to him by the defendant, Walter B. Schachte, who died before the trial of the case, concerning the matter in controversy.

When Van Ness was on the stand, the following took place:

"Q. Was there anything said by Mr. Schachte about owning that piece across the fence? A. Yes.

"Q. When was any question made? A. Several years later the fence rotted down; he said, 'Let's put up a fence'; I said, 'All right'; I did not know the fence was out of line. I said, 'There used to be a board from the eaves'; I said, 'The line should be here'; he said, 'That will play the devil with our flower bed.' (Objected to. Walter Schachte is dead and we object to that.)

"Court: I don't think that is competent.

"State exactly what took place between you and Mrs. Walter Schachte. (Objected to as above.)

"Court: This witness cannot testify to any conversation between himself and Mr. Walter Schachte, now deceased."

The Circuit Judge did not state upon what grounds he excluded the testimony, except that the witness could not testify to any conversation between himself and Schachte, who was then dead. The appellant contends that it is clear from this statement of the Court that the testimony was held inadmissible under Section 708, 1 Code of Laws, and that this was error, because it was not made to appear that the testimony was objectionable upon any of the grounds or for any of the reasons stated in the statute. See *Norris v. Clinkscales,* 47 S. C., 488; 25 S. E., 797.

As a fair inference from the language used by the trial Judge, we think that the appellant's contention, with respect to the ground upon which the testimony was excluded, is correct. Taking this to be true, it does not appear that the testimony was incompetent. See *Scott v. Wiggins,* 113 S. C., 88; 101 S. E., 113.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.