0295

POWERS CONSTRUCTION COMPANY, INC., Respondent, v. SALEM CAR-
PETS, INCORPORATED, d/b/a Cogdill Carpets, and d/b/a New Con-
cepts Flooring, and d/b/a New Concepts, Appellant.

(322 S. E. (2d) 30)

Court of Appeals

D. *Cravens Ravenel,* of *Belser, Baker, Barwick, Ravenel, Toal & Bender,* Columbia, *for appellant.*

L. *Franklin Elmore,* of *McGowan, Nettles, Keller & Eaton, P. A.,* Florence, *for respondent.*

Oct. 8, 1984.

GOOLSBY, Judge:

This is an action for breach of contract brought by the respondent Powers Construction Company (Powers) to recover damages it allegedly sustained when the appellant Salem Carpets, Inc., (Salem) revoked a subcontractor's bid. A jury returned a verdict in Powers' favor in the amount of $12,676. The questions on appeal relate to the denial of Salem's motion for involuntary nonsuit, the exclusion of certain evidence challenged as hearsay, the exclusion of certain opinion evidence, the qualification placed on a deposition admitted in evidence, the instructions to the jury, and the denial of Salem's motion for new trial. We affirm.

Powers, a general contractor, solicited bids from subcontractors for the preparation of a prime bid it intended to submit for the construction of a proposed high school in Mullins, South Carolina. In preparing its bid, Powers received phoned-in bids from subcontractors submitted during the morning of the day prime bids were due from general contractors interested in competing for the job. Powers got three bids from carpet subcontractors: a bid of $50,720 from Bonitz, a bid of $48,175 from Eatman Carpets, and a bid of $21,648 from Salem.

Powers incorporated Salem's proposal in the prime bid it made four hours later to the owners of the planned building. Powers' bid was secured by a five per cent bid bond and could not be withdrawn for thirty days.

Several days later, Salem wrote Powers confirming the bid it made by telephone and invited Powers' acceptance of the bid in writing.

Two weeks after submitting its bid to Powers, and before Powers was awarded the contract for the construction of the high school, Salem withdrew its bid. Salem had discovered what it described as "a glaring error" in the calculations used to prepare its bid proposal.

When Salem refused to perform, Powers contracted with Sears to install the carpet at a cost of $47,000 and afterwards instituted the present action against Salem.

I.

The first argument advanced by Salem is that the trial court erred in failing to grant its motion for involuntary nonsuit. Salem maintains that the only reasonable inference to be drawn from the evidence introduced by Powers is that no enforceable promise or contract existed between Salem and Powers. Powers, Salem argues, had no right to rely on its phoned-in bid because, when compared with other bids received by Powers, the bid showed on its face that it was the result of an error in computation and therefore could not be "snapped up." Moreover, Salem contends, its offer was revoked prior to acceptance.

In considering whether the trial court was correct or not in denying Salem's motion for nonsuit, we must, of course, view the evidence and all inferences reasonably deducible therefrom in the light most favorable to Powers, the nonmoving party. *Bellamy v. GMAC*, 269 S. C. 578, 239 S. E. (2d) 73 (1977). When the evidence is so viewed, we can only conclude that the trial court properly denied Salem's motion for involuntary nonsuit. The evidence establishes that Powers incurred a detrimental change of position in reliance on Salem's bid before the bid was withdrawn; therefore, we hold the bid had become irrevocable before Salem withdrew it.

A number of jurisdictions will permit a general contractor to enforce a subcontractor's bid under the doctrine of promissory estoppel where a general contract-

or's reasonable reliance upon a subcontractor's bid results in foreseeable prejudicial change in position. *See Illinois Valley Asphalt, Inc. v. I. F. Edwards Construction Co.,* 90 Ill. App. (3d) 768, 45 Ill. Dec. 876, 413 N. E. (2d) 209 (1980); *Montgomery Industries International Inc. v. Thomas Construction Co., Inc.,* 620 F. (2d) 91 (5th Cir. 1980) (applying Texas law), *Ferrer v. Taft Structurals, Inc.,* 21 Wash. App. 832, 587 P. (2d) 177 (1978); *James King & Son, Inc. v. DeSantis Construction No. 2 Corp.,* 97 Misc. (2d) 1063, 413 N. Y. S. (2d) 78 (Sup. Ct. 1977); *Construction Supply Co. v. Bostrom Sheet Metal Works, Inc.,* 291 Minn. 113, 190 N. W. (2d) 71 (1971); *E. A. Coronis Associates v. M. Gordon Construction Co.,* 90 N. J. Super. 69, 216 A. (2d) 246 (1966); *N. Litterio & Co. v. Glassman Construction Co.,* 319 F. (2d) 736 (D. C. Cir. 1963); *Drennan v. Star Paving Co.,* 51 Cal. (2d) 409, 333 P. (2d) 757 (1958); *see also* Annot., 48 A.L.R. (2d) 1069 § 12 at 1085-86 (1956); 1 WILLISTON, CONTRACTS § 140 (3d ed. 1957); Note, *Another Look at Construction Bidding and Contracts at Formation,* 53 Va. L. Rev. 1720 (1967). Because the promissory estoppel is a recognized doctrine in South Carolina [*Huggins Construction Co. v. Southern Bell Tel. & Tel.,* 276 S. C. 663, 281 S. E. (2d) 469 (1981)], we have no doubt that the doctrine can support an action brought in this state by a contractor who has submitted a prime bid in reliance upon a subcontractor's bid.

Before a recovery by a contractor employing the doctrine can be sustained, however, the elements of promissory estoppel must be established by the evidence. These elements are: (1) the presence of a promise unambiguous in its terms; (2) reasonable reliance upon the promise by the party by whom the promise is made; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made must sustain injury in reliance on the promise. *Illinois Valley Asphalt v. J. F. Edwards Construction Co,* 45 Ill. Dec. at 878, 413 N. E. (2d) at 211; *see Huggins Construction Co. v. Southern Bell Tel. & Tel., supra.*

Salem's argument centers only upon the second and third elements. Powers, Salem claims, "had evidence in its possession which would put it on notice that Salem's bid was probably in error;" therefore, Salem argues, Powers' reliance upon Salem's promise was unreasonable and could not have been

anticipated. *See* 28 Am. Jur. (2d) *Estoppel and Waiver* § 48 at 657 (1966). The evidence that Salem points to are the other two bids, which were $29,072 and $26,527 higher than one submitted by Salem.

We cannot say, however, that as matter of law Powers' reliance upon Salem's bid in preparing its own bid was unreasonable or unexpected and unforeseeable. Testimony offered by Powers indicated that it is "not uncommon" to have differences between the low and high bids submitted by subcontractors that are "more than double." The question of whether Powers reasonably relied upon Salem's bid and whether Power's reliance thereon was expected and foreseeable by Salem were, therefore, for the jury to determine. *See Padgett v. Cunningham,* 156 S. C. 356, 153 S. E. 280 (1930); *Van Ness v. Schachte,* 143 S. C. 429, 141 S. E. 721 (1928).

## II.

Salem next charges the trial judge with error in refusing to allow in evidence a statement from its witness Paul Bowman that a carpet representative told him sometime after Salem submitted its bid to Powers, "Golly, we heard ya'll were the lowest. You were really low." The testimony was needed, Salem claims, "to explain the effect those statements had upon" Bowman. On hearing these statements, Bowman checked his figures and discovered they were in error.

We need not determine whether the trial judge erred in excluding the statements because Bowman testified that based on a conversation he had with a carpet representative he "got the plans out and . . . checked the figures." Clearly, the proffered testimony was cumulative on the issue for which its introduction was sought; therefore, its exclusion was nonprejudicial. *Taylor v. Bridgebuilders, Inc.,* 275 S. C. 236, 269 S. E. (2d) 337 (1980); *Crouch v. Cudd,* 158 S. C. 1, 155 S. E. 136 (1930).

## III.

Salem also charges the trial judge with error in excluding other testimony it sought to introduce through Bowman. The trial judge refused to permit Bowman to testify as an expert witness on the subject of bid differentials.

The law appears well-settled in South Carolina that the qualification of a witness as an expert is a matter that rests largely within the discretion of the trial judge. *See Prince v. Associated Petroleum Carriers*, 262 S. C. 358, 204 S. E. (2d) 575 (1974); *Parks v. Morris Homes Corp.*, 245 S. C. 461, 141 S. E. (2d) 129 (1965). We discern no error here. Bowman was not shown to have possessed any experience as a contractor in comparing multiple bids received from carpet subcontractors.

## IV.

Salem further complains about the basis on which the trial judge allowed in evidence the deposition of Dale Ross Knepp, Powers' project manager for the Mullins contract. At the time Knepp's deposition was introduced, Knepp resided in North Carolina and no longer worked for Powers. The trial judge allowed Knepp's deposition in evidence pursuant to Circuit Court Rule 87 D(3)(b)[1] because Knepp was out of state. Salem argues, however, that Knepp's duties at the time of his deposition qualified him as a matter of law as a "managing agent" of Powers and that his deposition should have been allowed in evidence as a party's deposition pursuant to Rule 87 D(2)[2] instead. So admitted, Knepp's deposition could have been used for any purpose.

We discern no prejudice in the failure of the trial judge to admit Knepp's deposition pursuant to Rule 87 D(2).

Salem was allowed to publish those portions of Knepp's deposition it desired the jury to hear, including testimony that Knepp telephoned Salem after receiving its bid but before Powers submitted its own to verify the correctness of Salem's bid. A representative of the telephone company had earlier testified, also by deposition, that its records did not

---

[1] Circuit Court Rule 87 D(3)(b) provides in part:

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the Court finds: ... (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing or is out of the State of South Carolina, ....

[2] Rule 87 D(2) provides in part:

The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent of a ... private corporation ... which is a party may be used by an adverse party for any purpose.

reflect a call from Powers to Salem on the day Powers received bids from subcontractors.

In that connection, Salem also protests the trial court's ██ permitting another witness to quote Knepp's out of court statements concerning his confirmation of Salem's bid. The evidence bolstered Knepp's testimony. Salem argues that in South Carolina it is improper to offer proof of the credibility of a witness whose credibility has not been attacked. *See* DREHER, A GUIDE TO EVIDENCE IN SOUTH CAROLINA at 37 (1979). We agree. But even were we to hold the evidence constituted inadmissible hearsay, its admission was harmless and not reversible. *See* 5A C.J.S. *Appeal & Error* § 1724 at 923 (1958); *Watts v. Bell Oil Co. of Ocean Drive, Inc.*, 266 S. C. 61, 221 S. E. (2d) 529 (1976). The evidence was merely cumulative to other evidence. *See Long v. Conroy*, 246 S. C. 225, 143 S. E. (2d) 459 (1965).

## V.

Salem further contends that the trial judge erred in defining the term "fraud" to the jury in its instructions because neither the pleadings nor the evidence raised fraud as an issue in the case.

At trial, the jury received the following instruction ██ concerning promissory estoppel:

> An estoppel may rise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice... [A]t law fraud means deceit, deception, artifice or trickery operating prejudicially on the rights of another and so intended by inducing him to part with property or to surrender some legal rights.

As can be seen, the first part of the charge, which is taken verbatim from *Higgins Construction Co. v. Southern Bell Tel. & Tel. Co., supra*, 276 S. C. at 665, 281 S. E. (2d) 469, employs the term "fraud." We find nothing wrong with the trial judge explaining what that term means. After all, the purpose of instructions is to assist the jury in comprehending the case so

that it can reach a just conclusion. *Builders' Lumber & Supply Co. v. Cheek*, 139 S. C. 299, 137 S. E. 734 (1927). The better the jury is informed, the more likely it will arrive at the right verdict.

At any rate, the giving of an instruction that is inapplicable to the pleadings and evidence will not provide a basis for reversal where no prejudice results to the complaining party. 5A C.J.S. *Appeal & Error* § 1764a at 1204 (1958); *see Ellison v. Simmons*, 238 S. C. 364, 120 S. E. (2d) 209 (1961). When we consider the trial judge's charge in its entirety, as we must in determining whether the instruction complained of was prejudicial, we think the instruction, even if we were to view it as improper, was not injurious or prejudicial to Salem. *Id.* The gist of the instruction obviously concerned promissory estoppel, not fraud. If anything, the judge's elaboration on the term "fraud" favored Salem, not Powers.

## VI.

Salem's final contention is that the trial judge erred in refusing its motion for a new trial upon the ground "that the jury verdict of exactly one-half (½) of the damages proved constituted a verdict which was inconsistent with the evidence" and "reflected an improper application of the law to the facts of the case by the fact finder."

As we mentioned above, the jury awarded Powers the sum of $12,676. Salem's position is that, if Powers were entitled to any damages at all, Powers was entitled to $25,352, the difference between the amount of Salem's bid, $21,648, and the amount Powers paid Sears to install the carpet, $47,000. We believe the law of this State denies Salem any ground to complain.

In *Trowbridge v. Railway Company*, 90 S. C. 183, 73 S. E. 78 (1911), a contention similar to that made here was presented. In upholding the refusal by the trial judge to grant a new trial upon the ground that there was no testimony to sustain the verdict, the Supreme Court stated:

> The point made here by appellant is that the plaintiff claimed $297.07 as the amount of the damages, and that it was not disputed that, if plaintiff was entitled to recover at all, he was entitled to recover the whole amount

claimed, whereas the jury only awarded $190. As proof of the larger amount necessarily included the smaller, surely the appellant has no ground to complain of the favorable consideration of the jury.

90 S. C. at 185, 73 S. E. 78.

Similarly, in *Seymour & Co. v. Perry*, 118 S. C. 265, 110 S. E. 389 (1922), the appellant took issue with the verdict. The Supreme Court affirmed the judgment after it dealt with the question in the following way:

> The second question relates to the verdict. The plaintiff claimed $1,020, and the verdict was for $500. The appellant claims that the verdict was illogical and cannot stand. The defendant cannot complain if the verdict is more favorable to him than the evidence warrants.

118 S. C. at 267, 110 S. E. 389.

In *Reardon v. Averbuck*, 92 S. C. 569, 75 S. E. 959 (1912), the Supreme Court held that a defendant could not complain that a jury in a claim and delivery action placed the value of the goods at $200 instead of $1,000, the alleged real value. The Court noted that "it was to his advantage that the jury ... assess[ed] the property at less than its value." 92 S. C. at 572-73, 75 S. E. 959.

A case very similar to the instant one is *Johns v. League, Duvall & Powell*, 202 Ga. 868, 45 S. E. (2d) 211, 174 A.L.R. 757 (1947). In that case, a broker sued an owner of real estate for $1,750 that the broker claimed was due him as a commission. The jury returned a verdict for one-half of that amount, *i.e.*, $875. The defendant appealed the denial of his motion for new trial. He took the position that the verdict was unauthorized because it should have been either for the entire amount sued for or in his favor entirely. With one Justice dissenting, the Georgia Supreme Court affirmed the denial of the defendant's motion for new trial because the Court believed itself bound by the following rule, which is quoted from *Dolvin v. American Harrow Co.*, 131 Ga. 300, 62 S. E. 198, 202 (1908):

> "A defendant against whom a verdict has been returned, cannot complain that the verdict is for a less amount than that which the plaintiff was entitled to recover, if entitled to recover at all."

45 S. E. (2d) at 214.

In our view, *Trowbridge, Seymour & Co.*, and *Reardon*, whose holdings are identical to the *Johns* case, control the contentions made by Salem. The latter cannot complain that the verdict was for $12,676 and not for $25,352 because proof of the greater amount necessarily included the lesser amount. Accordingly, the judgment is

Affirmed.

SHAW and BELL JJ., concur.