685 S.E.2d 625

**Mark CRAFT, Appellant,**

**v.**

**SOUTH CAROLINA COMMISSION FOR the BLIND, Respondent.**

No. 4628.

Court of Appeals of South Carolina.

Heard June 10, 2009.
Decided Nov. 3, 2009.

562

Ralph Gleaton, of Greenville, for Appellant.

Melvin D. Bannister, of Columbia, for Respondent.

HEARN, C.J.

Mark Craft contends the trial court erred in finding he did not demonstrate the elements necessary to recover under a theory of promissory estoppel. We affirm.

## FACTS

Craft received a vending license from the South Carolina Commission for the Blind (Commission) in 1981 and began working as a blind licensed vendor (vendor) in Florence that same year.[1] Craft, who has lived with his mother his entire

---

1. Vendors are self-employed and are not considered employees of the Commission.

life, continued to work as a vendor in Florence until he and his mother moved to Anderson in 1991. Thereafter, Craft accepted successive positions as a vendor at a welcome center in Fair Play, a rest stop in Anderson, and ultimately, at the county square in Greenville.

In 2005, while working at Greenville County Square, Craft received a bid notice from the Commission, informing him of new vending sites available through the South Carolina Department of Corrections. In the bid notice, the Commission informed all interested vendors that it did not guarantee income at any location, it could cancel the bid, and it could make adjustments to the bid as necessary. After having his mother read the bid notice to him, Craft submitted a bid to the Commission for a vending position at Perry Correctional Institution (Perry). In September 2005, Bill Holland, Craft's counselor with the Commission, called Craft and offered him the position at Perry, which Craft accepted. Following his conversation with Holland, Barbara Skinner, the Business Enterprise Program Director for the Commission, sent Craft a letter, confirming his selection as the vendor at Perry. According to the bid notice, Craft was scheduled to begin work at Perry in November 2005 or March 2006.

Pursuant to rules promulgated by the Commission, a vendor can only operate one vending location at a time. Thus, after Craft accepted the position at Perry, Holland informed Ronnie Roberts, property manager of the Greenville County Square, of Craft's impending departure from the county square in order to accept a vending position at another location. Furthermore, Holland added that the Commission would select a vendor to replace Craft at the county square. On October 17, 2005, Roberts, without citing any reason, notified Holland of Greenville County's intent to close the food service canteen at the county square effective December 31, 2005. Despite subsequent efforts by the Commission to convince Greenville County to keep the canteen open, it refused to reconsider its decision.

Craft's last day of work at the county square was December 29, 2005. On this date, Holland inspected Craft's vending site at the county square and completed a report. In his report, Holland stated that Craft would begin work at Perry on January 24, 2006. On January 4, 2006, the Commission sent

Craft a proposed contract between the Commission and the South Carolina Department of Corrections. Although the contract was unsigned, Barbara Skinner testified she had no reason to think an agreement between the parties would not be reached. However, the Commission never entered into a contract with the Department of Corrections, and the vending site at Perry never opened.

After learning the vending location at Perry would not become available, Craft routinely checked the bid line, a telephone service provided by the Commission that informs vendors of job openings. As of the time of trial, no vending positions had become available near the Anderson area where Craft lived with his mother. As a result, Craft has not worked since his last day at the county square canteen on December 29, 2005. However, Craft continued to receive commissions from the vending machines at the county square through February 6, 2006.

On June 29, 2006, Craft commenced an action against the Commission, seeking to recover damages from the Commission based on promissory estoppel. Following a bench trial, the trial court issued an order denying recovery, finding Craft failed to demonstrate the elements of promissory estoppel. This appeal followed.

## STANDARD OF REVIEW

Promissory estoppel is equitable in nature. *Rushing v. McKinney*, 370 S.C. 280, 289, 633 S.E.2d 917, 922 (Ct.App. 2006). In an action at equity, this court can find facts in accordance with its view of the preponderance of the evidence. *Doe v. Clark*, 318 S.C. 274, 276, 457 S.E.2d 336, 337 (1995). However, this court is not required to disregard the findings of the trial court who saw and heard the witnesses and was in a better position to judge their credibility. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989).

## LAW/ANALYSIS

### I. PROMISSORY ESTOPPEL

Craft argues the trial court erred in finding he did not demonstrate the elements necessary to recover under promissory estoppel. We disagree.

In order to recover under a theory of promissory estoppel, a claimant must demonstrate: (1) the presence of a promise unambiguous in its terms; (2) reasonable reliance on the promise; (3) the reliance was expected and foreseeable; and (4) injury in reliance on the promise. *Satcher v. Satcher,* 351 S.C. 477, 483–84 570 S.E.2d 535, 538 (Ct.App.2002). The applicability of the doctrine of promissory estoppel depends on whether the refusal to apply it would virtually sanction the perpetration of fraud or would result in other injustice. *Citizens Bank v. Gregory's Warehouse, Inc.,* 297 S.C. 151, 154, 375 S.E.2d 316, 318 (Ct.App.1988).

A. Unambiguous Promise

Craft argues the Commission, by way of its agents, Bill Holland and Barbara Skinner, unambiguously offered him the vending position at Perry. By contrast, the Commission asserts its promise was ambiguous because the language in the bid notice did not guarantee income at any location, allowed the Commission to cancel the bid, and stated that the opening dates for the correctional facilities were subject to change. In addition, the Commission contends Craft knew the contract between the Commission and Perry was unsigned on January 4, 2006; as a result, Craft knew or should have known any promise made to him concerning future employment was contingent upon the parties signing the contract.

Initially, the Commission seems confused as to what constitutes the promise in this case. The promise in this case occurred when Holland called Craft and offered him the position at Perry. Most of the Commission's arguments center around the language found within the bid notice itself. However, the bid notice did not promise Craft future employment at Perry. Rather, the bid notice merely provided all interested vendors with a list of locations where vending positions were available and invited them to apply for these job openings. Therefore, because the bid notice was not part of the promise of future employment or referenced as controlling terms by Holland, its language is of no force in determining whether the promise was ambiguous. Furthermore, the Commission acknowledges Craft did not receive notice of the unsigned contract between the Commission and Perry until January 4, 2006. As stated above, the promise in this case

occurred when Holland offered Craft the position at Perry a few days prior to Skinner's congratulatory letter dated September 22, 2005. Thus, the fact that the Commission mailed an unsigned contract between itself and Perry more than two months following the promise of employment does not render the promise ambiguous. Accordingly, the Commission unambiguously promised Craft the vending position at Perry.

## B. Reasonable Reliance

██ Craft argues he reasonably relied on the promise of future employment made by the Commission because it possessed the sole authority to operate vending locations and hire vendors pursuant to statute.[2] The Commission contends Craft's reliance on the promise was unreasonable in light of the fact he knew the agreement between the Commission and Perry was unsigned on January 4, 2006.

Regulations promulgated by the Commission prevent a vendor from operating more than one vending location at a time. Thus, when the Commission offered Craft the vending position at Perry, he was forced to choose between accepting the Commission's offer and continuing to work at the Greenville County Square. Ultimately, Craft relinquished his job at the Greenville County Square in reliance on the Commission's promise of employment at Perry. In our view, Craft's reliance on the Commission's promise of employment was reasonable. The Commission maintained the sole authority to hire vendors. *See* § 43–26–30(b) (stating the Commission possesses the authority to hire personnel for the administration of the vending facility program). To us, it seems reasonable for a would-be employee to rely on a promise of future employment from the only entity with the power to hire him. Additionally, the Commission did not make the promise of employment conditioned upon Perry entering into a formal contract with

---

**2.** Section 43–25–70 of the South Carolina Code (1985) empowers the Commission to operate all vending locations. Section 43–26–30(b) of the South Carolina Code (1985) grants the Commission the authority to "appoint such personnel as may be necessary for the administration of the vending facility program." Regulation 18–1(A) of the South Carolina Code of Regulations (Supp. 2007) vests the Commission with the authority to provide employment for vendors licensed under the Randolph–Sheppard Vending Facility Program.

the Commission. *See Davis v. Greenwood Sch. Dist.,* 365 S.C. 629, 635, 620 S.E.2d 65, 68, (2005) (holding it is unreasonable to rely on a conditional promise). Moreover, Craft did not learn that Perry and the Commission had not entered into a contract until January 4, 2006. By this time, Craft had already relied on the Commission's promise by giving up his job at the county square. October 3, 2005, the date on which the Commission informed Greenville County of Craft's imminent departure from the location, Craft neither knew, nor should have known, that the contract between the Commission and Perry had not been signed. Accordingly, we find Craft's reliance on the Commission's promise was reasonable.

### C. Reliance Was Expected & Foreseeable

Craft contends it was expected and foreseeable he would quit his job at the county square after being promised employment at Perry because the Commission's rules prevented him from holding more than one vending position at a time. The Commission asserts this element cannot be established because it committed no wrongful act.

In our view, the Commission could have both expected and foreseen that Craft would relinquish his job at the county square in reliance on the promise of employment at Perry. The Commission's own rules prevented Craft from holding more than one vending position at a time. Thus, after Craft accepted the job at Perry, he was forced to give up his job at the county square. Accordingly, Craft's reliance on the Commission's promise of employment at Perry was expected and foreseeable.

### D. Injury

Craft argues he sustained injury in reliance on the Commission's promise of employment at Perry by giving up his job at the county square. The Commission asserts Craft did not suffer any injury in reliance on the Commission's promise because the Commission never promised him income at any site, Craft's damages were not proximately caused by the Commission, and Greenville County decided to terminate the vending position at the county square. In the alternative,

the Commission contends Craft is not entitled to recover from the Commission because he failed to mitigate his damages.

Craft has failed to demonstrate that he suffered injury in reliance on the Commission's promise. Without citing any reason for its decision, Greenville County informed the Commission of its intent to close the food service canteen at the county square effective December 31, 2005.[3] Because Greenville County offered no explanation for its decision and no reason was presented at trial, we simply cannot speculate as to the motivating factors prompting the county's decision. All we are left with on appeal is the fact that the vending position at the county square was eliminated as of December 31, 2005. Although Craft could have remained at the county square until its closing date, he quit on December 29. Thus, even assuming Craft quit his job in reliance on the Commission's promise, he could no longer work at the county square after December 31 because the location had been closed down. As a result, because his job at the county square was no longer available following his resignation, Craft has failed to demonstrate that he sustained injury by quitting his job in reliance on the Commission's promise. Accordingly, we find Craft has failed to demonstrate the elements of promissory estoppel.

## II.  REMAINING ISSUES

Craft contends the trial court erred in concluding the theories of promissory estoppel and quasi-contract are equivalent. In addition, Craft argues the trial court erred in finding his claim for promissory estoppel was barred by the South Carolina Tort Claims Act.

In the trial court's order, it observed "promissory estoppel is considered quasi-contract and quasi-tort. . . ." Even assuming Craft is correct and the trial court erred in making this statement, it makes no difference on appeal. *See McCall v.*

---

**3.**  Pursuant to the contract entered into between the Commission and Greenville County, either party could terminate the agreement upon ninety days written notice. Although Greenville County terminated the contract with less than ninety days notice, the Commission chose not to commence legal action against Greenville County. Because Craft was not a party to this contract and because he does not argue he was a third-party beneficiary under the contract, this fact has no effect on Craft's attempt to recover damages from the Commission.

*Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter."). The trial court correctly set forth the elements of promissory estoppel. If the trial court erred in referring to promissory estoppel as quasi-contract, this error had no bearing on the resolution of this case. Similarly, even if the trial court erred in concluding Craft's claim for promissory estoppel was barred by the Tort Claims Act, it makes no difference on appeal. After concluding Craft failed to demonstrate the elements of promissory estoppel, the trial court also found the Tort Claims Act barred Craft's claim. Because we agree with the trial court that Craft failed to demonstrate the elements of promissory estoppel, we need not address this issue. *See Whiteside v. Cherokee County Sch. Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating appellate courts need not address remaining issues when resolution of prior issue is dispositive).

Accordingly, the decision of the trial court is

**AFFIRMED.**

THOMAS, J., and KONDUROS, J., concur.