# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Basilides F. Cruz, Joseph A. Floyd, Sr., Arthur C. Gillam III, Alma C. Hill, Barry N. Martin, Charles F. Morris, Sr., and Joseph A. Smith, Appellants,

v.

City of Columbia, Respondent.

And

Larry Strickland, Denious L. Dimery, and Bailey G. McClinton, Appellants,

v.

City of Columbia, Respondent.

Appellate Case No. 2019-000374

───────────

Appeal From Richland County
R. Scott Sprouse, Circuit Court Judge

───────────

Opinion No. 5932
Heard February 10, 2022 – Filed August 3, 2022

───────────

**AFFIRMED**

───────────

Lucy Clark Sanders and Nancy Bloodgood, both of Bloodgood & Sanders, LLC, of Mt. Pleasant; Susan K. Dunn, Legal Director for American Civil Liberties Union Foundation of South Carolina, of Charleston; and

Christopher James Bryant, of Yarborough Applegate, LLC, of Columbia, all for Appellants.

W. Allen Nickles, III, of Nickles Law Firm, of Columbia, for Respondent.

**KONDUROS, J.:**  This case comes back to our court following remand to the circuit court for a determination of whether the plaintiffs could prove their claims for equitable estoppel and promissory estoppel.[1]  The circuit court found in favor of the City of Columbia (the City), concluding the plaintiffs could not establish the necessary damages to prevail on their claim.  We disagree with the circuit court's reasoning as to damages, but affirm its finding in favor of the City on additional sustaining grounds.

## FACTS/PROCEDURAL BACKGROUND

In 2009, Kirby Bishop and several firefighters and policeman, all retired and under the age of 65, sued the City regarding the City's promise to provide them no-cost health insurance for their lifetimes.  That year, the City began charging a $33.18 or $63.17 monthly premium, depending on the level of coverage, for retirees under 65 to participate in the City's health insurance program.  The Bishop plaintiffs alleged causes of action for breach of contract, unfair trade practices, promissory estoppel, equitable estoppel, and declaratory judgment.  The circuit court granted summary judgment on all causes of action except promissory estoppel, holding the plaintiffs' reliance on a promise of no-cost health insurance was not reasonable based on their knowledge that the City's health plan was subject to change.  Additionally, the circuit court held their reliance was unreasonable because the municipality could not be bound by the acts of individuals who told the plaintiffs about no-cost health insurance because that would illegally usurp the function of city council.  The plaintiffs appealed, and this court affirmed the grant of summary judgment as to all claims with the exception of the equitable estoppel and promissory estoppel claims.  The *Bishop* opinion[2] remanded the case to the circuit court to determine if

---

[1] When this matter was remanded to the circuit court, causes of action for both equitable estoppel and promissory estoppel were at issue.  However, the circuit court only ruled on the matter of promissory estoppel and that is the only cause of action still being pursued by Appellants.

[2] *Bishop v. City of Columbia*, 401 S.C. 651, 667-68, 738 S.E.2d 255, 263 (Ct. App. 2013).

the promises made by City representatives—supervisors and human resource officers—could be sufficient to give rise to an estoppel claim even though the City's representative's statements were not legally sufficient to create a contract between the City and the plaintiffs.

In 2013, the City stopped paying the full cost for health insurance for retirees 65 and older. As a result, Larry Strickland and a group of other retirees, 65 or older, filed suit alleging similar claims to those in the *Bishop* case. The Strickland plaintiffs sought class certification. That request was denied in August 2016. The court found the criteria for class certification were not met because each member would have to demonstrate individually how he was prejudiced or his position was made worse in reliance on a promise by the City. The remanded *Bishop* case and the Strickland case were consolidated.

After a two-day bench trial, the circuit court found for the City. The circuit court concluded the plaintiffs failed to establish proof of damages for the promissory estoppel claim because they "failed to prove they would have been better off." This appeal followed.

**STANDARD OF REVIEW**

"Promissory estoppel is equitable in nature. In an action at equity, this court can find facts in accordance with its view of the preponderance of the evidence." *Craft v. S.C. Comm'n for Blind*, 385 S.C. 560, 564, 685 S.E.2d 625, 627 (Ct. App. 2009) (citation omitted). "However, this court is not required to disregard the findings of the trial court who saw and heard the witnesses and was in a better position to judge their credibility." *Id*.

**LAW/ANALYSIS**

    **I.    Damages**[3]

The doctrine of promissory estoppel was first recognized in South Carolina in *Higgins Construction Co. v. Southern Bell Telephone & Telegraph Co.*, 276 S.C. 663, 281 S.E.2d 469 (1981). It states, "[the] doctrine holds 'an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and

---

[3] We are combining Appellants' issues on appeal as they all inextricably relate to the proof of damages in the case.

if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice.'" *Id*. at 665, 281 S.E.2d at 470 (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966)). In order to establish a promissory estoppel claim, a claimant must demonstrate: "(1) the presence of a promise unambiguous in its terms; (2) reasonable reliance upon the promise by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made must sustain injury in reliance on the promise." *Satcher v. Satcher,* 351 S.C. 477, 483-84, 570 S.E.2d 535, 538 (Ct. App. 2002) (quoting *Woods v. State,* 314 S.C. 501, 505, 431 S.E.2d 260, 263 (Ct. App. 1993)). "The applicability of the doctrine depends on whether the refusal to apply it 'would be virtually to sanction the perpetration of a fraud or would result in other injustice.'" *Id*. at 484, 570 S.E. 2d at 538 (quoting *Citizens Bank v. Gregory's Warehouse, Inc.,* 297 S.C. 151, 154, 375 S.E.2d 316, 318 (Ct. App.1988)). "Notably, neither meeting of the minds nor consideration is a necessary element." *Barnes v. Johnson*, 402 S.C. 458, 469, 742 S.E.2d 6, 11 (Ct. App. 2013). "Thus, in the interest of equity, the doctrine 'looks at a promise, its subsequent effect on the promisee,' and where appropriate '*bars the promisor* from making an inconsistent disposition of the property.'" *Id.* (quoting *Satcher*, 351 S.C. at 484, 570 S.E.2d at 538) (emphasis in original).

Appellants assert the circuit court used an incorrect standard in evaluating damages because it stated Appellants failed to establish they "would have been better off" had the City not made the promise regarding the life-long provision of free health insurance. The circuit court referenced the order denying class certification when using the "better off" language. That order denying class certification for the Strickland plaintiffs relied on *Craft v. South Carolina Commission for Blind* for the proposition that Craft's promissory estoppel claim failed because he could not show he would have been better off but for the Commission's promise. Craft worked as the canteen vendor at Greenville's County Square, but was promised a canteen position at the Perry Correctional Institute closer to his home. *Id*. at 563, 685 S.E.2d at 626. Craft quit his job in Greenville, and the Commission withdrew its promise for the Perry position. *Id*. The Greenville canteen closed, without explanation, and Craft was without a job. *Id*. at 563-64, 685 S.E.2d at 626-27. The court denied Craft's promissory estoppel claim reasoning the broken promise did not cause Craft's injury because he would have been unemployed with the unexplained closing of the Greenville canteen anyway. *Id*. at 568, 685 S.E.2d at 629. The lack of nexus between Craft's injury and the promise was the fatal flaw. Therefore, extrapolating *Craft* into a requirement that Appellants prove they would have been better off is not quite fitting.

Determining whether the application of the "better off" standard was erroneous can be better considered by comparing the elements of equitable estoppel and promissory estoppel. "To prove [equitable] estoppel against the government, the relying party must prove: (1) the lack of knowledge and of the means of knowledge of the truth of the facts in question; (2) justifiable reliance upon the government's conduct; and (3) a prejudicial change in position." *S.C. Dep't of Transp. v. Horry County.,* 391 S.C. 76, 83, 705 S.E.2d 21, 25 (2011). *See also Town of Kingstree v. Chapman*, 405 S.C. 282, 313, 747 S.E.2d 494, 510 (Ct. App. 2013) ("The elements of equitable estoppel for 'the party claiming the estoppel are: (1) lack of knowledge and of means of knowledge of truth as to facts in question; (2) reliance upon conduct of the party estopped; and (3) prejudicial change in position.'" (quoting *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 589, 553 S.E.2d 110, 114 (2001))). A successful equitable estoppel claim clearly requires a plaintiff to show a prejudicial change in position. By contrast, promissory estoppel requires an injury in reliance on an unambiguous promise. Admittedly, determining exactly what that means in a particular case can be difficult, and every promise cannot be enforced based solely on the promisee's hope the promisor will follow through. However, the proof of an injury in reliance in promissory estoppel appears to be something at least slightly different than a prejudicial change in position. The circuit court's order conflates the two concepts indicating Appellants needed to prove with specificity that but for the promise of free health coverage they would have found other, better employment. In this case, the promise arguably induced long-term conduct. For someone relying on an ongoing promise, the ability to establish their reliance in terms of what they specifically forewent may be very difficult.

Many of the cases involving promissory estoppel do not end in a finding for the party asserting it either because the promise at issue was ambiguous or the reliance on it was unreasonable. *See A&P Enters., LLC v. SP Grocery of Lynchburg, LLC*, 422 S.C. 579, 589-90, 812 S.E.2d 759, 764 (Ct. App. 2018) (finding plaintiff did not demonstrate an unambiguous promise for defendant to sell back to plaintiff three parcels of land on which defendant had operated a liquor store, grill, and gas station in the absence of any specific terms about the buyback); *Rushing v. McKinney*, 370 S.C. 280, 295, 633 S.E.2d 917, 925 (Ct. App. 2006) (holding promise too ambiguous to support claim when plaintiff could not "clearly articulate" the terms of an alleged oral contract, including whether money involved would be treated as a loan or capital contribution or how the parties would "settle up"); *Barnes,* 402 S.C. at 471-73, 742 S.E.2d at 12-13 (denying promissory estoppel claim because although plaintiff established a general understanding that he could purchase a home and renovate and split the profits with a partner, "clear

and convincing evidence of several key terms was never clearly articulated"); *Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 634-35, 620 S.E.2d 65, 67-68 (2005) (holding teachers' reliance on pay raises if they attained additional certification was not reasonable when district superintendent indicated raise was subject to school board approval).

A few cases have produced successful promissory estoppel claims. The original promissory estoppel case, *Furman University v. Waller*, 124 S.C. 68, 72, 117 S.E. 356, 357 (1923), involved charitable subscriptions.[4] Waller pledged $10,000 to Furman University during a campaign drive. *Id*. In reliance on the pledges received through the campaign, Furman made numerous improvements and additions to its campus. *Id*. at 73, 117 S.E.2d at 358. The court concluded Waller's demurrer could not be granted, and Waller's estate was obligated to fulfill the pledge. *Id*. at 86, 88, 117 S.E.2d at 362. The court, following the trend of other jurisdictions, determined that under the right circumstances, what may appear to be a naked promise, could become an enforceable obligation. *Id*. at 85, 117 S.E.2d at 362-63.

In *Higgins Construction Company,* the complaint alleged Southern Bell failed to move telephone lines by the date Southern Bell promised, knowing Higgins would rely upon their removal by that date. *Higgins*, 276 S.C. at 665, 281 S.E.2d at 469-70. It also alleged Southern Bell's failure to remove the lines by the promised date resulted in delay of the entire project, adding to Higgins' costs and interfering with its normal construction program. *Id*. at 666, 281 S.E.2d at 470. The court granted the promissory estoppel claim, but remanded for a calculation of damages because "[t]he verdict did not take into account certain admitted benefits derived by [Higgins] from wages paid to employees and expenses for equipment during the period in question." *Id*. at 666-67, 281 S.E.2d at 470.

In *Powers Construction Co. v. Salem Carpets, Inc.*, 283 S.C. 302, 305-06, 322 S.E.2d 30, 32-33 (Ct. App. 1984), the court considered the issue of a contractor's bid in reliance on a subcontractor's bid. "A number of jurisdictions will permit a general contractor to enforce a subcontractor's bid under the doctrine of promissory estoppel where a general contractor's reasonable reliance upon a subcontractor's

---

[4] Although *Furman University* does not use the term promissory estoppel, it is recognized as one of the first South Carolina cases to employ the doctrine. *See Higgins*, 276 S.C. at 665, 281 S.E.2d at 470 ("While this [c]ourt has never used the term 'promissory estoppel,' it has applied the doctrine.").

bid results in a forseeable prejudicial change in position."[5]  *Id*. at 305-06, 322 S.E.2d at 33.  A jury found for Powers for one-half the difference between what Powers had to pay another subcontractor and the erroneous bid by Salem Carpets. *Id*. at 310, 322 S.E.2d at 35.

Finally, in *Satcher*, the court considered a promise by a grandfather to his grandson.

> In reasonable reliance on that promise, [grandson] moved to the house and provided Grandfather with companionship and other services for more than twenty years.  In further reliance, [grandson] gave up his opportunity to purchase a house, investing time and effort in Slide Hill and Grandfather's care.  All of this was foreseeable and intended by Grandfather who did not wish to live alone on the property. . . . Moreover, we believe it would be an injustice not to apply the doctrine of promissory estoppel here because of the extreme amount of time and energy [grandson] has expended in reliance on Grandfather's promise.  Therefore, we find [grandson] has proved his claim to Slide Hill and remand this matter for further proceedings consistent with our decision.

*Satcher*, 351 S.C. at 486, 570 S.E.2d at 539-40.

Of all the foregoing cases, *Satcher* is most instructive because it is similar in the amount of time invested by the promisee in reliance on the promise.  Appellants worked numerous years for the City believing they were earning no-cost health insurance for life.  There were other reasons Appellants stayed in their jobs including a high-quality pension and general quality of life.  However, the promise of free health insurance was one of several benefits that enticed Appellants to stay. It is not essential that the specific promise of no-cost insurance be the sole inducement for their continuing employment just as Waller's promised donation in

---

[5] This is the only South Carolina promissory estoppel case that specifically mentions a prejudicial change in position.  However, in a contractor-subcontractor bid situation, a prejudicial change in position would necessarily take place as the subcontractor's bid would be an essential element on which the contractor's bid was calculated.

*Furman University* did not have to be the sole reason Furman made the improvements it made. *See Furman University*, 124 S.C. at 85, 117 S.E. at 362 ("[I]t is not essential . . . that the promise of the subscriber be the sole inducement to the activities and expenditures of the beneficiary.").

It is noteworthy that the four cases cited above result in two different types of damages. *Furman* and *Satcher* produced expectation damages—something the City says cannot result from a promissory estoppel claim. *Higgins* and *Salem* resulted in reliance damages. Our jurisprudence has recognized that either type of damages may be appropriate depending on the case. *See Thomerson v. DeVito*, 430 S.C. 246, 260, 844 S.E.2d 378, 386 (2020) (stating "[a] trial court retains broad discretion under promissory estoppel to fashion whatever remedies or damages justice requires" (quoting 28 Am. Jur. 2d Estoppel and *Waiver* § 51 (2011))). In this case, like *Satcher* and *Furman*, the specific performance of the promise would likely be the most logical and equitable method of discerning damages. We recognize this is a complicated issue, but conclude requiring Appellants to prove they would have been "better off" was too high a burden to place on them under the circumstances of this case. Therefore, we reverse the circuit court's ruling as to damages.

## II. Additional Sustaining Grounds – Unambiguous Promise and Reasonable Reliance

The circuit court did not address any other elements of the promissory estoppel claim except damages. The City asserts several additional sustaining grounds for affirming the circuit court's grant of summary judgment. One such ground is that the promise in this case was not unambiguous. We agree.

> [T]he presence of either an ambiguous promise or an injury not arising out of the inconsistent disposition precludes promissory estoppel's application, though perceived inequities may exist. Thus, promissory estoppel has broad applicability to prevent injustice, but where a promise is unclear or the alleged harms are unconnected to the inconsistent disposition, the doctrine does not risk imposing its own inequity against the party sought to be estopped.

*Barnes*, 402 S.C. at 470, 742 S.E.2d at 12 (citations omitted).

Because one may properly invoke promissory estoppel absent elements typically required for a contract, such as a meeting of the minds or exchanged consideration, the doctrine still requires, by clear and convincing evidence, a "promise unambiguous in its terms." *See Satcher,* 351 S.C. at 483-87, 570 S.E.2d at 538-40 (holding an unclear agreement that lacked details was not shown by clear and convincing evidence to be unambiguous); *Rushing,* 370 S.C. at 295, 633 S.E.2d at 925 (holding that an agreement was ambiguous and not enforceable under promissory estoppel because the party seeking enforcement of the promise "could not clearly articulate [its] terms"). This necessity for unambiguous terms, in the absence of a contract, reflects balancing the availability of an equitable remedy with ensuring the remedy's appropriate application. *See Satcher,* 351 S.C. at 483-84, 570 S.E.2d at 538-39 (stating promissory estoppel requires "a promise unambiguous in its terms" and "[u]nlike a contract, which requires a meeting of the minds and consideration, promissory estoppel looks at a promise [and] its subsequent effect on the promisee").

Consistent with this balancing of interests and the lack of a contract specifically defining the agreement, an inability "*to clearly articulate the terms* of [an] alleged oral contract," including how an existing "capital contribution" would be treated and specifically how the parties "would settle up," renders an agreement ambiguous. *Rushing,* 370 S.C. at 295, 633 S.E.2d at 925; *see Satcher,* 351 S.C. at 487, 570 S.E.2d at 540 (finding, despite testimony that some agreement existed, an unclear, unspecific promise to be ambiguous); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 52 (2011) ("The promise must be clear and unambiguous and sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms.").

*Id.* at 471-72, 742 S.E.2d at 12.

In the present case, the promise of "no-cost health insurance for life" does not establish clearly articulated and definite terms. The ambiguity inherent in such a general promise is demonstrated by Appellants' expectations regarding exactly what they believe they are entitled to receive. One appellant testified he believed the City promised a high-quality health plan with prescription coverage better than that provided by Medicare. When pressed further on the point, he stated, "The city told me I would have a high quality health insurance plan, I don't care how they do it, that's what I expect." Another appellant testified he was entitled to the benefits that were in place on the date of his retirement, regardless of whether changes were made to the City's plan. Another appellant also testified his benefits were fixed as of the date of retirement regardless of changes in the City's plan that might lessen his coverage.

Additionally, Appellants' reliance on the promise under all the circumstances presented falls short of the reasonable reliance necessary to establish a claim for promissory estoppel. None of the written materials presented as exhibits indicate that the no-cost benefit was guaranteed for life. Appellants acknowledged their retirement letters stated the *current* policy was to allow them, individually, to participate in the City's health program and the City would cover the cost. They all acknowledged the term current would indicate at the present time. The letter does not indicate that offer was guaranteed for life nor could the Appellants have relied on the letter during the period of their employment as they did not receive it until the conclusion of their service to the City. The newsletters presented only informed plan participants when new insurance booklets were being issued and make no mention of the cost to participate much less indicating promises regarding *future* costs or participation. Furthermore, several Appellants testified they understood City Council was responsible for the budget and that City Council held the authority to make changes as needed. Moreover, Appellants testified they understood any individual who proclaimed no-cost health insurance was guaranteed for life was not personally able to fulfill such an obligation. Furthermore, the ambiguity of the promise renders its reliability questionable. *See A&P Enterprises, LLC*, 422 S.C. at 589, 812 S.E.2d at 764 ("[R]eliance on any alleged promise by [the promisor] was unreasonable in light [of] the ambiguities of the alleged promise.").

As our case law recognizes, there must be a balancing in the consideration of promissory estoppel claims. The proponent of the estoppel must demonstrate all requirements by clear and convincing evidence so as to not "risk imposing its own inequity against the party sought to be estopped." *Barnes*, 402 S.C. at 470, 742 S.E.2d at 12. Additionally, promissory estoppel is only invoked when the failure

to find it would essentially result in a fraud. This case does not reveal an intent on the part of the City to defraud Appellants. It has not changed the premiums charged to retirees on a whim. Instead, it is a response to the ever-increasing costs of healthcare. Additionally, the City continues to pay approximately 90-95% of the retiree's coverage depending on the coverage selected. Based on all of the foregoing, we conclude the decision of the circuit court in favor of the City is

**AFFIRMED.**

**WILLIAMS, C.J., and VINSON, J., concur.**