757 S.E.2d 384

Les SPRINGOB, Paul Trussell, Barton Dumas,
Stanley Harpe and John Yenco, Plaintiffs,

Of whom Paul Trussell, Barton Dumas, and
John Yenco are the, Appellants,

v.

The UNIVERSITY OF SOUTH CAROLINA and The University
of South Carolina Gamecock Club, Respondents.

Appellate Case No. 2012–206887.

No. 27363.

Supreme Court of South Carolina.

Heard Nov. 7, 2013.
Decided March 12, 2014.
Rehearing Denied May 7, 2014.

492

Joseph M. McCulloch, Jr., and Kathy R. Schillaci, both of Law Offices of Joseph M. McCulloch, Jr., of Columbia, for Appellants.

William H. Davidson, II, and Andrew F. Lindemann, both of Davidson & Lindemann, PA, of Columbia, for Respondents.

Justice KITTREDGE.

This is a direct appeal from the trial court's grant of summary judgment in favor of Respondents, the University of South Carolina and the University of South Carolina Gamecock Club. The trial court held that the statute of frauds barred Appellants' claims. While we conclude the statute of frauds applies in the first instance, we find a question of fact exists concerning the question of equitable estoppel, rendering summary judgment inappropriate. We affirm in part, reverse in part, and remand.

## I.

In anticipation of the opening of the University of South Carolina's new basketball arena, the University of South Carolina and the University of South Carolina Gamecock Club (collectively "the University") distributed a brochure to high-level Gamecock Club members. The brochure offered these members the opportunity to purchase premium seating for the upcoming basketball seasons, including a number of amenities for Men's Basketball season, Women's Basketball season, and other events held at the arena. These amenities included

preferred parking, access to a private area of the arena known as the McGuire Club, and the option to purchase the best tickets to all events held at the arena.[1]

The brochure offered these Gamecock Club members the opportunity to purchase these tickets over a "five year term." Members were to pay $5,000 per seat in the first year and $1,500 per seat each year in years two through five. Appellants have offered affidavits stating that Athletic Department employees promised Appellants that, after year five, they would only have to maintain their Gamecock Club membership and pay the face value of season tickets to retain these premium seats. Appellants accepted the University's offer and made the required payments for years one through five.

After the fifth year, the University contacted Appellants and requested a $1,500 payment per seat for the sixth year of premium seating. Appellants requested that the University review the history of the seat offerings to determine whether these payments were required. The University concluded that the agreement did require members to continue paying the $1,500 fee per seat every year that they wished to retain the premium seating.

Appellants subsequently brought an action against the University alleging breach of contract and seeking specific performance. After discovery, the parties filed cross motions for summary judgment. The trial judge denied Appellants' motion and granted the University's motion, finding that due to the absence of a written contract the statute of frauds barred Appellants' claims. Appellants filed a timely notice of appeal, and we certified the appeal from the court of appeals pursuant to Rule 204(b), SCACR.

## II.

In reviewing a trial court's grant of summary judgment, we apply "the same standard required of the circuit court under Rule 56(c), SCRCP." *Bass v. Gopal, Inc.*, 395 S.C. 129, 133, 716 S.E.2d 910, 912 (2011) (citing *Edwards v.*

---

1. The brochure was a lure for Gamecock Club members who wanted to "get close to the action" and "see every pick, pump, bump and dunk!" It also promised that "with these big time seats come plenty of big time amenities[,]" and the rhetorical "[s]ound too good to be true?"

*Lexington Cnty. Sheriff's Dep't,* 386 S.C. 285, 290, 688 S.E.2d 125, 128 (2010)). Rule 56(c) provides that summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether a genuine issue of material fact exists, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Bass,* 395 S.C. at 133–34, 716 S.E.2d at 912 (citing *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.,* 385 S.C. 452, 456, 684 S.E.2d 756, 758 (2009)). "[T]he non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.,* 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## III.

Appellants claim the trial court erred by granting Respondents' motion for summary judgment because the agreement does not fall within the statute of frauds, or, alternatively, that the University is equitably estopped from asserting the statute of frauds. While we find that the agreement is subject to the statute of frauds, we find there is a genuine issue of material fact as to whether the University is equitably estopped from asserting the statute of frauds as a defense.

## A.

Appellants allege that their claims are not subject to the statute of frauds because the agreement was capable of being performed within one year. Alternatively, Appellants claim that the brochure distributed by the University constitutes a signed writing sufficient to satisfy the statute of frauds. We disagree.

■ "[T]he Statute of Frauds requires that a contract that cannot be performed within one year be in writing and signed by the parties." *Davis v. Greenwood Sch. Dist. 50,* 365 S.C. 629, 634, 620 S.E.2d 65, 67 (2005) (citing S.C.Code Ann. § 32–3–10 (1991)). If there is a possibility that a contract might be

performed within one year, the statute of frauds is not a bar to enforcement of the contract. *Roberts v. Gaskins,* 327 S.C. 478, 484, 486 S.E.2d 771, 774 (Ct.App.1997).

█ We agree with the trial court that the agreement was not capable of being performed within one year. Indeed, the very language of the brochure states that the agreement to purchase premium seating was for a "five year term." It is undisputed that the agreement, at the very least, required the Appellants to pay $5,000 per seat in year one and $1,500 per seat each year during years two through five. In turn, the University was required to provide Appellants with premium seating each year. Even if Appellants were to remit the entire sum of $11,000 per seat during the first year, the University's additional obligations under the agreement could not be performed in less than five years. Thus, we find there is no genuine issue of material fact as to whether the statute of frauds applies. Having found that the statute of frauds applies, we turn now to Appellants' contention that the brochure distributed by the University satisfies the signed writing requirement.

█ In order to satisfy the statute of frauds, there must be a writing signed by the party against whom enforcement is sought, and "the writings must establish the essential terms of the contract without resort to parol evidence." *Cash v. Maddox,* 265 S.C. 480, 484, 220 S.E.2d 121, 122 (1975) (citing *Barr v. Lyle,* 263 S.C. 426, 430, 211 S.E.2d 232, 234 (1975)). However, "[u]nder the statute of frauds, the form of the writing is not material, and may be shown entirely by written correspondence...." *Barr,* 263 S.C. at 430, 211 S.E.2d at 234 (citing *Speed v. Speed,* 213 S.C. 401, 408, 49 S.E.2d 588, 591 (1948)). Appellants claim that the brochure, cancelled checks, payment records, and letters from the University confirming Appellants' rights to the premium seats collectively constitute a signed writing sufficient to satisfy the statute of frauds.

█ Initially, we agree with the University that there is no formal contract signed by the parties. Even if we were to construe the brochure and correspondence from the University to constitute sufficient writings, these writings must bear the University's signature for the statute of frauds to be satisfied. The presence or absence of the University's signa-

ture turns on whether the University logo on the brochure suffices for a legal signature. Appellants claim the University logo is a valid signature for these purposes but cite no authority to support this proposition, and the majority rule is contrary to Appellants' position. *See, e.g., Venable v. Hickerson, Phelps, Kirtley & Assocs.*, 903 S.W.2d 659, 662–63 (Mo.Ct. App.1995) (finding that an employer's logo on a monogrammed notepad was not sufficient to constitute a signature); *Falls v. Va. State Bar*, 240 Va. 416, 397 S.E.2d 671, 673 (1990) (holding that a logo on the Virginia State Bar's personnel manual was not a signature). We elect to follow the vast majority of jurisdictions and hold that a logo does not constitute a legal signature. Moreover, we find that the brochure and subsequent correspondence do not "establish the essential terms of the contract without resort to parol evidence." *Cash*, 265 S.C. at 484, 220 S.E.2d at 122.

In sum, we find the agreement between Appellants and the University falls within the statute of frauds. Additionally, we find that there is no signed writing sufficient to satisfy the requirements of the statute of frauds, and that the brochure and correspondence from the University do not establish all of the essential terms of the agreement. We turn now to Appellants' reliance on the doctrine of equitable estoppel.

### B.

"[T]he doctrine of estoppel may be invoked to prevent a party from asserting the statute of frauds." *Collins Music Co. v. Cook*, 281 S.C. 580, 583, 316 S.E.2d 418, 420 (Ct.App.1984) (citing *Florence Printing Co. v. Parnell*, 178 S.C. 119, 127, 182 S.E. 313, 316 (1935)). The party asserting estoppel "must show that he has suffered a definite, substantial, detrimental change of position in reliance on the contract, and that no remedy except enforcement of the bargain is adequate to restore his former position." *Id.* "It is not sufficient to show merely that he has lost an expected benefit under the contract." *Id.* "Before the estoppel doctrine can be invoked, however, there must be competent proof of the existence of the oral contract." *Atl. Wholesale Co. v. Solondz*, 283 S.C. 36, 40, 320 S.E.2d 720, 723 (Ct.App.1984) (quotations and citations omitted).

■ Taking the evidence in the light most favorable to the Appellants, we find there is proof of an oral contract between the parties. Certainly, it is undisputed that there is an agreement for performance over the initial five-year period, and the University so concedes. Appellants' affidavits create a fact question as to the existence of an oral contract beyond year five. Indeed, Appellants' affidavits state they were induced to purchase the special seating under an oral promise that they would not have to pay a fee separate from the Gamecock Club membership and the face value of season tickets beyond year five. This is sufficient to create an issue of material fact as to whether Appellants suffered a definite, substantial, and detrimental change in reliance on these purported oral representations. Thus, we find that the trial court erred in granting summary judgment in favor of the University.[2]

## IV.

We affirm insofar as the trial court applied the statute of frauds but reverse the trial court's entry of summary judgment in favor of the University as to Appellants' equitable estoppel claim. We remand the matter for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

TOAL, C.J., BEATTY and HEARN, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur but write separately because I do not agree with the majority's holding that a logo can never constitute a signature for purposes of the statute of frauds. Such a

---

**2.** Appellants also claim that the part performance exception to the statute of frauds applies. Because we find that a genuine issue of material fact exists as to estoppel, we need not reach the issue of part performance. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

holding is unnecessary to resolve the issue in light of the absence of essential terms of a contract in the writings. I would not reach the issue in this factual setting, as I find the question more nuanced than the majority suggests.