799 S.E.2d 912

**Linda RODARTE, J. Perry Kimball, George M. Lee, III, Mena H. Gardiner, and John Love, Plaintiffs,**

**Of whom George M. Lee, III, Mena H. Gardiner, and John Love are Respondents,**

**v.**

**UNIVERSITY OF SOUTH CAROLINA and University of South Carolina Gamecock Club, Petitioners.**

Appellate Case No. 2015-002103
Opinion No. 27718

Supreme Court of South Carolina.

Heard March 1, 2017
Filed May 11, 2017

594

Robert E. Stepp and Bess J. DuRant, both of Sowell Gray Stepp & Laffitte, L.L.C., of Columbia, for Petitioners.

J. Lewis Cromer and Julius W. Babb, IV, both of J. Lewis Cromer & Associates, L.L.C., of Columbia, for Respondents.

JUSTICE KITTREDGE:

This case stems from a contract dispute between the University of South Carolina and the university's booster club known as the Gamecock Club (Petitioners) and several Gamecock Club members (Respondents). As part of the bargain Respondents struck with Petitioners, Respondents are entitled to "assigned reserved parking" at home football games. Respondents claim Petitioners violated this contract provision when USC discontinued parking on the "apron" around the football stadium and failed to give Respondents first priority in the selection of new parking spaces. Petitioners assert that

the parking provision has no priority requirement and it was satisfied when Respondents were assigned reserved parking spaces in an adjacent lot. As the case comes before this Court on certiorari to the court of appeals, the only issue before us is whether this is an appropriate case for the use of equitable estoppel: the trial court held it was not, but the court of appeals reversed. We agree with the trial court and reverse the court of appeals.

## I.

Petitioners USC and the Gamecock Club work together to promote the school's athletic programs. This includes selling tickets to sporting events and offering other privileges that are contingent on the amount of a Gamecock Club member's financial contributions. In the mid-1980s, the Gamecock Club instituted the Lifetime Membership program, which offered[1] Gamecock Club members the opportunity to become Lifetime Members. Lifetime Membership was achieved by making donations at specified levels or purchasing a life insurance policy valued at a minimum of $100,000 and naming USC as the beneficiary. In 1990, Respondents George M. Lee, III and John Love became Lifetime Members. Stuart Hope became a Lifetime Member in 1986, which membership passed to Respondent Mena H. Gardiner, his daughter and named beneficiary, upon his death.[2]

The terms of the Lifetime Membership program were placed in written contracts, signed by Respondents (or their predecessors), which included an attached "Exhibit A" listing the benefits of membership. These benefits included

Four Season Football Tickets (Best Available)
Additional Four Season Football Tickets (Total of 8)
*Assigned Reserved Parking*
Second Priority on Away and Bowl Game Tickets
Tickets May Be Assigned to One Designated Heir
Four Season Basketball Tickets (Best Available)

---

1. The Gamecock Club no longer offers these memberships.

2. One perk of being a Lifetime Member is the ability to designate a beneficiary to receive the membership interest upon the member's death.

Assigned Parking[3] at Coliseum (If Available)
Second Priority on Away and Tournament Game Tickets
Second Priority on Any Tickets Involving Any Other South
Carolina Athletic Events.

(emphasis added).

For more than twenty years, Respondents were assigned parking spaces for home football games on the apron immediately surrounding Williams-Brice Stadium. Beginning with the 2012 football season, USC eliminated those parking spaces. The Gamecock Club informed Respondents that they would continue to have assigned, reserved parking spaces pursuant to their Lifetime Membership contracts. The parking-selection process imposed by the Gamecock Club resulted in each Respondent receiving two parking spaces[4] in the Farmers Market parking area across the street from the stadium. Miffed at their perceived lack of *priority* parking, Respondents filed this action.

Respondents' complaint alleged Petitioners failed to comply with their contractual obligation to give Lifetime Members first priority in the selection of parking spaces. The complaint sought an order "enjoining and restraining [Petitioners] from interfering with the contractual rights of the life members of the Gamecock Club, particularly the rights of such members to have the highest priority for parking within locations at or near Williams Brice Stadium."

The parties filed cross-motions for summary judgment.[5] Respondents contended that Petitioners' failure to give them priority in the selection of parking spaces constituted a breach of their "clear and unambiguous contracts" and, furthermore, that Petitioners were "estopped from asserting any position contrary to the existence of [Respondents'] contract rights ... due to their compliance with the same over several decades."

---

3. Exhibit A to Stuart Hope's contract provided for "Assigned *Reserved* Parking at Coliseum (If Available)." (emphasis added).

4. When Respondents were allowed to park on the apron of Williams-Brice, they were allotted only one parking space each.

5. Prior to this, Linda Rodarte resolved her dispute with Petitioners and the parties entered a stipulation of dismissal, with prejudice, as to her claims. *See* Rule 41(a)(1), SCRCP.

Respondents argued that their contracts with Petitioners, specifically the provision in Exhibit A referring to "assigned reserved parking," unambiguously granted Respondents priority in the selection of parking spaces.

Alternatively, Respondents argued the contracts were ambiguous and extrinsic evidence should be admitted to prove the contracts' terms. Respondents also claimed Petitioners should be equitably estopped from changing Respondents' parking-selection priority because Petitioners "conveyed to [Respondents] that they were entitled to higher priority in parking than non-lifetime donors" and Respondents "reasonably relied on [Petitioners'] actions and changed their positions accordingly by becoming lifetime donors."[6]

In contrast, Petitioners argued that the Lifetime Membership contracts were unambiguous, did not guarantee Respondents a particular parking space, and did not make any promises as to the priority Respondents would receive in the selection of parking spaces. Petitioners also argued Respondents could not rely on parol evidence or equitable estoppel to contradict or supplement the terms of their unambiguous contracts.

At the summary judgment hearing, Respondents referenced a March 5, 2008 letter from Chris Wyrick, the executive director of the Gamecock Club, and the depositions of Love and Marion Hope,[7] as evidence that Respondents were assured they would have first priority in the selection of parking spaces. In the 2008 letter, Wyrick informed Lifetime Members that they were "at the top of all Gamecock Club priority." In his deposition, Marion Hope testified that in addition to the benefits contained in Exhibit A to his father's contract, Petitioners gave them "verbal assurances" that they would receive eight basketball tickets—notwithstanding the fact that the contract stated they would receive four tickets—and that they would have "top priority" in the Gamecock Club for everything listed in Exhibit A. Similarly, in his deposition, Love testified

---

6. However, Respondents did not bring any claims based on fraud or negligent misrepresentations.

7. Marion Hope is Stuart Hope's son; his deposition was taken because he participated in the discussions that led to his father entering into the Lifetime Membership agreement with Petitioners.

that he interpreted "assigned reserved parking" to mean the "best parking spot available around the stadium."

In response, Petitioners argued that evidence was inadmissible under the parol evidence rule, which prohibits courts from considering extrinsic evidence of prior or contemporaneous agreements when the parties have a written contract. Petitioners also pointed out that Respondents could not possibly have relied on the Wyrick letter from 2008 when entering into the Lifetime Membership agreements decades earlier.

The trial court granted Petitioners' motion for summary judgment. In its order, the trial court held that "assigned reserved parking" was unambiguous and parol evidence of its meaning was therefore inadmissible, the Lifetime Membership contracts did not provide Respondents with a right to any particular parking space or selection priority, and Respondents' claim for equitable estoppel failed as a matter of law.

The court of appeals affirmed in part and reversed in part.[8] *Rodarte v. Univ. of S.C.*, Op. No. 2015-UP-357 (S.C. Ct. App. filed July 15, 2015) 2015 WL 4275972. The court of appeals affirmed the trial court's ruling that the Lifetime Membership contracts were unambiguous and extrinsic evidence was therefore inadmissible to prove their meaning.[9] However, the court of appeals reversed the trial court's ruling as to equitable estoppel. The court of appeals found that Respondents' "affidavits and depositions, which indicate [Respondents] relied on USC's assurances of first and second priority 'always' in exchange for the increased donations made to USC" were "sufficient to create an issue of material fact as to whether [Respondents] suffered a detrimental change in reliance on the representations." *Id.* We granted Petitioners a writ of certiorari to review the court of appeals' decision.

---

8. By this point J. Perry Kimball had dismissed his claims against Petitioners and he is therefore no longer a party to this action.

9. We denied Respondents' petition for a writ of certiorari to review that decision, and it is now the law of the case and cannot be challenged by Respondents. *See, e.g., Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) ("Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court.").

## II.

Petitioners argue there is no evidence to support Respondents' claim for equitable estoppel and, therefore, the trial court properly granted Petitioners' motion for summary judgment. According to Petitioners, the court of appeals erred because (1) equitable estoppel cannot be used to alter the terms of an unambiguous contract; (2) Respondents are attempting to use equitable estoppel offensively, when it can only be used defensively; and (3) equitable estoppel is unavailing against Petitioners because they are government entities. We agree the court of appeals erred by holding that equitable estoppel can be used to alter the terms of an unambiguous, written contract, and we reverse.[10]

 Because this case requires us to answer a question of law—whether equitable estoppel may be used to prevent the enforcement of an unambiguous contract—we apply a different standard of review than in the typical fact-based challenge to summary judgment.[11] *Cf. Eagle Container Co. v. County of Newberry,* 379 S.C. 564, 567–68, 666 S.E.2d 892, 894 (2008) (noting that interpretation of an unambiguous ordinance is a question of law and the Court has a broader scope of review in those instances than when it reviews questions of fact (footnote omitted)). Accordingly, we review this issue de novo. *See, e.g., Town of Summerville v. City of North Charles-*

---

10. Because we reverse the court of appeals on this ground we need not consider Petitioners' other arguments. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting that when resolution of one issue is dispositive, there is no need to consider other issues).

11. In those situations we "review[ ] the granting of summary judgment under the same standard applied by the trial court," which "may grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Quail Hill, LLC v. County of Richland,* 387 S.C. 223, 234–35, 692 S.E.2d 499, 505 (2010) (quoting Rule 56(c), SCRCP). We are also required to view " 'the evidence and all inferences which can reasonably be drawn therefrom . . . in the light most favorable to the nonmoving party.' " *Id.* at 235, 692 S.E.2d at 505 (quoting *Pye v. Estate of Fox,* 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006)).

*ton*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) ("[T]his Court reviews questions of law de novo.").

"In its broadest sense, equitable estoppel is a means of preventing a party from asserting a legal claim or defense that is contrary or inconsistent with his or her prior action or conduct." 28 Am. Jur. 2d *Estoppel and Waiver* § 27 (2011); *see, e.g., Parker v. Parker*, 313 S.C. 482, 488, 443 S.E.2d 388, 391 (1994) (holding that equitable estoppel was a valid defense to a paternity challenge brought by the children of an intestate decedent against a putative heir because the children had "lulled her into a position where she could no longer defend her parentage"). "The essence of equitable estoppel is that the party entitled to invoke the principle was misled to his injury." *S.C. Pub. Serv. Auth. v. Ocean Forest, Inc.*, 275 S.C. 552, 554, 273 S.E.2d 773, 774 (1981). "The essential elements of equitable estoppel are divided between the estopped party and the party claiming estoppel." *Strickland v. Strickland*, 375 S.C. 76, 84, 650 S.E.2d 465, 470 (2007).

> The elements of equitable estoppel as related to the party being estopped are: (1) conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. The party asserting estoppel must show: (1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped;[12] and (3) a prejudicial change of position in reliance on the conduct of the party being estopped.

*Id.* at 84–85, 650 S.E.2d at 470.

In reversing the trial court, the court of appeals relied on this Court's opinion in *Springob v. Univ. of S.C.*, 407 S.C. 490, 757 S.E.2d 384 (2014). The plaintiffs in *Springob* were individ-

---

12. Obviously, Respondents could not have been induced into becoming Lifetime Members by statements made years after signing the Lifetime Membership agreements. Therefore, subsequent representations, such as those found in the 2008 Wyrick letter, lend no support to Respondents' claim for equitable estoppel.

uals that had entered into agreements with the Gamecock Club to receive access to premium seating at basketball games and other benefits in exchange for cash contributions. 407 S.C. at 493–94, 757 S.E.2d at 385–86. The brochure promoting this program offered Gamecock Club members "the opportunity to purchase these tickets over a 'five year term.' Members were to pay $5,000 per seat in the first year and $1,500 per seat each year in years two through five." *Id.* at 494, 757 S.E.2d at 386.

At the end of the five-year period, the Gamecock Club contended that the plaintiffs had to continue making annual payments of $1,500 per seat. *Id.* Believing no further payments were required under the terms of their agreements, the plaintiffs brought a breach of contract claim against USC and the Gamecock Club. *Id.* The plaintiffs submitted affidavits stating they were promised that after year five "they would only have to maintain their Gamecock Club membership and pay the face value of season tickets to retain the[ir] premium seats." *Id.* The parties filed cross-motions for summary judgment; the trial court granted the defendants' motion, "finding that due to the absence of a written contract the statute of frauds barred [the plaintiffs'] claims." *Id.*

We affirmed the trial court's ruling that there was no valid contract between the parties—the agreements, which were not capable of being performed in one year, were not in writing as required by the statute of frauds. *Id.* at 495–97, 757 S.E.2d at 387 (citations omitted). However, we reversed the trial court's decision as to the plaintiffs' equitable estoppel claim because "there [wa]s proof of an oral contract between the parties" that was "sufficient to create an issue of material fact as to whether [the plaintiffs] suffered a definite, substantial, and detrimental change in reliance on th[o]se purported oral representations." *Id.* at 498, 757 S.E.2d at 388.

The facts of this case are easily distinguishable from those of *Springob.* In *Springob,* there was no written contract between the parties, and the plaintiffs raised equitable estoppel to counter USC and the Gamecock Club's statute of frauds defense. *See id.* at 495, 497, 757 S.E.2d at 386–87. In contrast, here Respondents seek to use equitable estoppel to alter the terms of unambiguous, written contracts. The court of appeals'

expansive interpretation of *Springob* effectively sanctioned an end-run around the parol evidence rule and was erroneous. *Cf. Spoone v. Newsome Chevrolet-Buick*, 309 S.C. 432, 434, 424 S.E.2d 489, 490 (1992) (noting that "equitable estoppel could not be invoked to nullify a mandatory statutory restriction" and "equity will not prevail over a positive enactment of the legislature" (citations omitted)). *See generally* 30A C.J.S. *Equity* § 128 (2007 & Supp. 2016) (discussing the equitable maxim "equity follows the law").

 "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." *Gilliland v. Elmwood Props.*, 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990) (citing *Iseman v. Hobbs*, 290 S.C. 482, 483, 351 S.E.2d 351, 352 (Ct. App. 1986)). " 'Where an agreement is clear on its face and unambiguous, the court's only function is to interpret its lawful meaning and the intent of the parties *as found within the agreement.*' "[13] *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 568, 577, 762 S.E.2d 696, 700 (2014) (emphasis added) (quoting *Miles v. Miles*, 393 S.C. 111, 117, 711 S.E.2d 880, 883 (2011)). " 'Interpretation of a contract is governed by *the objective manifestation of the parties' assent at the time the contract was made*, rather than the subjective, after-the-fact meaning one party assigns to it.' " *N. Am. Rescue Prods., Inc. v. Richardson*, 411 S.C. 371, 378, 769 S.E.2d 237, 241 (2015) (emphasis added) (quoting *Laser Supply & Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 334, 676 S.E.2d 139, 143–44 (Ct. App. 2009)).

 Nonetheless, Respondents seek to use equitable estoppel to introduce evidence of "the promises and assurances given by employees of Petitioners to Respondents." This is the very type of evidence the parol evidence rule excludes.

---

**13.** Indeed, Lee has previously benefited from this Court's refusal to allow USC to add to the terms of the Lifetime Membership agreement. *See Lee v. Univ. of S.C.*, 407 S.C. 512, 518–19, 757 S.E.2d 394, 398 (2014) (holding that the Lifetime Membership agreement, which guaranteed Lee "the opportunity to purchase tickets," precluded USC and the Gamecock Club "from imposing additional fees that Lee must pay before being allowed" that opportunity). As the old saying goes, what's good for the goose is good for the gander.

*See, e.g., Sanders v. Allis Chalmers Mfg. Co.,* 237 S.C. 133, 138, 115 S.E.2d 793, 795 (1960) ("Where parties reduce an agreement to writing, it is to be presumed that the sole agreement of the parties and the extent of the undertaking was included therein, and parol evidence cannot be introduced to contradict it." (citations omitted)); *see also Welch v. Edisto Realty Co.,* 170 S.C. 31, 40, 169 S.E. 667, 671 (1933) ("If plaintiffs desired that the parol agreement, for which they now contend, be incorporated in the written instrument, they should have taken legal steps to reform that paper."). Allowing Respondents' equitable estoppel claim to go forward—with the introduction of parol evidence that would entail—would be tantamount to permitting a party to convert an unambiguous contract into an ambiguous one based on little more than "the subjective, after-the-fact meaning one party assigns to it." *N. Am. Rescue Prods., Inc.,* 411 S.C. at 378, 769 S.E.2d at 241 (citation omitted); *see, e.g., Carolina Ceramics, Inc. v. Carolina Pipeline Co.,* 251 S.C. 151, 157, 161 S.E.2d 179, 181 (1968) (recognizing that parol evidence is admissible to prove the meaning of an ambiguous, written contract). A party cannot avoid the parol evidence rule simply by claiming he thought the contract he signed meant something other than what it said. We agree with the Supreme Court of Rhode Island that "quasi-contractual remedies such as equitable estoppel are inapplicable when the parties are bound by an express contract." *Zarrella v. Minn. Mut. Life Ins. Co.,* 824 A.2d 1249, 1260 (R.I. 2003). Simply put, Respondents cannot use equitable estoppel to let in through the back door what the parol evidence rule prevents from coming in the front door.

Indeed, an unambiguous, written contract is inherently incompatible with the doctrine of equitable estoppel. To succeed on a claim for equitable estoppel, a party must prove "lack of knowledge, and the means of knowledge, of the truth as to the facts in question." *Strickland,* 375 S.C. at 84, 650 S.E.2d at 470. However, an unambiguous contract is by definition capable of only one reasonable interpretation. *See Carolina Ceramics, Inc.,* 251 S.C. at 155–56, 161 S.E.2d at 181 (stating that a contract is *ambiguous* if it is "capable of being understood in more senses than one"). Therefore, a party to an unambiguous contract cannot prove lack of knowledge or the means of acquiring knowledge of the contract's meaning, which bars an equitable estoppel claim in the first instance.

## III.

We reiterate that this is a breach of contract case involving unambiguous, written contracts. Respondents have made no claims of fraud or negligent misrepresentations by Petitioners; therefore, the general rule that written contracts must be respected, and effect must be given to their plain terms, prevails. *Cf. Slack v. James*, 364 S.C. 609, 616, 614 S.E.2d 636, 640 (2005) (stating that the parol evidence rule will not "prevent[ ] one from proceeding on tort theories of negligent misrepresentation and fraud"); *Shumpert v. Serv. Life & Health Ins. Co.*, 220 S.C. 401, 411, 68 S.E.2d 340, 344 (1951) (noting the tension between "recognition of the rule of sanctity of written contracts and the rule of relief from fraudulent representations which induced the making of a contract"). We reverse the court of appeals and reinstate the entry of summary judgment for Petitioners.

**REVERSED.**

BEATTY, C.J., HEARN, FEW, JJ., and Acting Justice J. Cordell Maddox, Jr., concur.