# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Johnny Thomerson, Plaintiff,

v.

Richard DeVito and Samuel Mullinax, both individually and as Liquidating Shareholder Trustees of Lenco Marine, Defendants.

Appellate Case No. 2019-000552

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
Richard M. Gergel, United States District Judge

---

Opinion No. 27972
Heard September 26, 2019 – Filed May 27, 2020

---

## CERTIFIED QUESTION ANSWERED

---

Dan M. David, of Charleston, and O. Grady Query, of Query Sautter & Associates, LLC, of Charleston, for Plaintiff.

Mark W. McKnight, of Charleston, and W. Scott Turnbull, of Crary Buchanan, PA, of Stuart, Florida, *pro hac vice*, for Defendants.

---

**CHIEF JUSTICE BEATTY:** The Court accepted the following question certified to it by the United States District Court for the District of South Carolina:

> Does the three-year statute of limitations of S.C. Code Ann. § 15-3-530 apply to claims for promissory estoppel?

We take this opportunity to clarify state law in this regard and hold the statute of limitations does not apply to promissory estoppel claims.

## I. FACTS

Plaintiff alleges Defendants, the former owners of Lenco Marine (a manufacturer of boat products), failed to give him a three-percent ownership interest in Lenco that was promised to him as part of his compensation package. Plaintiff was hired by Lenco no later than May 2007. Defendant Samuel Mullinax was the CEO of Lenco and Defendant Richard DeVito was its president. Lenco was sold in December 2016 to Power Products, LLC.

In his complaint, Plaintiff asserted claims against Defendants for (1) breach of contract and the covenant of good faith and fair dealing, (2) promissory estoppel, (3) *quantum meruit* and unjust enrichment, (4) negligent misrepresentation, (5) constructive fraud, and (6) amounts due under the South Carolina Payment of Wages Act. Defendants moved for summary judgment, arguing the claims were time-barred.

Plaintiff testified that, during negotiations regarding his compensation with Defendant DeVito prior to his start at Lenco, they discussed the fact that he and another employee wanted to have an ownership interest in the company, and DeVito told them they would "work on that as we go on down the road." Plaintiff stated Defendant DeVito provided some detail about an equity plan in early 2009, informing him and the second employee that Lenco was going to buy back a fifteen percent interest from a minority shareholder, Matthew Muer, and distribute it as a three percent share to each of five employees, including Plaintiff. Plaintiff believed the five sets of three-percent equity shares would be issued contemporaneously with the stock buyback.

In 2011, Plaintiff and the second employee had two conversations with Defendant DeVito, in which they inquired about their equity shares. Each time, Defendant DeVito abruptly ended the conversation. Defendant DeVito allegedly told Plaintiff at one point that he did not want to distribute ownership shares in the company while there was a lawsuit pending against Lenco by another company, Bennett Marine. The second employee resigned shortly thereafter without receiving

an ownership share of Lenco.

The Bennett Marine litigation was concluded in September 2013 in Lenco's favor; however, Plaintiff did not receive a three-percent equity share. Defendant DeVito variously advised Plaintiff that he did not want to discuss the subject or that they would talk about it later. Finally, at the end of 2016, Plaintiff again pressed Defendant DeVito as to whether he was going to fulfill his promise to give him a three-percent ownership interest, and Defendant DeVito stated he was not. Plaintiff then brought this action against Defendants in the federal district court in 2018.

The district court granted summary judgment to Defendants on all of Plaintiff's claims—except promissory estoppel—on the basis they were time-barred by the three-year statute of limitations contained in S.C. Code Ann. § 15-3-530 (2005). The district court found Plaintiff should have known he potentially had a claim against Defendants in 2013 (after the litigation concluded with Bennett Marine and the equity shares were not distributed). The parties disagreed on whether the claim for promissory estoppel was subject to the three-year statute of limitations. The district court certified this question to the Court after finding it presented a question of law that could be outcome determinative and there appeared to be no controlling state precedent. The Court accepted the question pursuant to Rule 244, SCACR.

## II. STANDARD OF REVIEW

"In answering a certified question raising a novel question of law, this Court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right." *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (citation omitted).

## III. DISCUSSION

Plaintiff contends this Court has held promissory estoppel is an equitable claim and has expressly stated in long-standing precedent that the statute of limitations is not applicable to equitable claims. As a result, the statute of limitations in S.C. Code Ann. § 15-3-530 (2005) is not directly applicable to a claim for promissory estoppel.[1] Defendants, in contrast, assert Plaintiff is seeking monetary damages, which they contend is legal, not equitable, relief. Defendants note

---

[1] Plaintiff also asserts his claim should not be deemed untimely even if the statute of limitations applies. This issue, however, is not before the Court.

promissory estoppel has been described in our case law as a quasi-contractual equitable remedy and that the statute of limitations has been applied to claims for *quantum meruit*, which has also been characterized as a quasi-contract, so application of the statute of limitations should be extended to claims for promissory estoppel, either under the subsection governing contracts, obligations, or liabilities (express or implied) in S.C. Code Ann. § 15-3-530(1), or the subsection applicable to injuries to the rights of others not arising on contract or enumerated by law, contained in S.C. Code Ann. § 15-3-530(5). We agree with Plaintiff that the statute of limitations is not applicable to a claim of promissory estoppel. Our decision rests on (A) an examination of our statute of limitations, and (B) the determination whether a claim for promissory estoppel is properly characterized as legal or equitable in nature.

## A. The Statute of Limitations

This Court has long recognized that the statute of limitations now codified in section 15-3-530 applies to actions at law, while the doctrine of laches[2] applies to suits in equity. Although the statute of limitations may be applied by analogy in a court of equity, the court has the authority to extend that period if it believes a longer period is warranted under the circumstances. This distinction logically flows from the fact that equity transcends the direct application of legal restrictions such as the statute of limitations to provide relief to wronged parties where the law otherwise affords no relief:

> This Court has held that the statute of limitations does not apply to actions in equity. *See Anderson v. Purvis,* 211 S.C. 255, 44 S.E.2d 611 (1947); *Anderson v. Purvis,* 220 S.C. 259, 67 S.E.2d 80 (1951) (holding that the Court's power to do equity transcends the limitations of the statute of limitations).

*Dixon v. Dixon*, 362 S.C. 388, 400, 608 S.E.2d 849, 855 (2005); *see also Parr v. Parr*, 268 S.C. 58, 67, 231 S.E.2d 695, 699 (1977) ("The action of the plaintiffs is one in equity. Therefore, the trial judge correctly ruled that neither statute of limitations is applicable."); *McKinnon v. Summers*, 224 S.C. 331, 336–37, 79 S.E.2d

---

[2] *Mid-State Tr., II v. Wright*, 323 S.C. 303, 307, 474 S.E.2d 421, 423–24 (1996) (defining laches as neglect in bringing a claim for an unreasonable period that results in material prejudice to the opposing party and stating whether laches applies is highly fact-specific, "so each case must be judged on its own merits").

146, 148 (1953) (observing the statute of limitations for law cases applies only by analogy to a court of equity); *Parrott v. Dickson*, 151 S.C. 114, 122, 148 S.E. 704, 707 (1929) ("Certainly, the [s]tatute of [l]imitations is not applicable, since this is a case in equity."); *Fanning v. Bogacki*, 111 S.C. 376, 381, 98 S.E. 137, 138 (1919) (considering laches, not the statute of limitations, in an equitable matter); *Blackwell v. Ryan*, 21 S.C. 112, 126 (1884) (observing "courts of equity are to be considered as affected only by analogy [by] the statute of limitations" and applying laches to an equitable claim); *Kirksey v. Keith*, 32 S.C. Eq. (11 Rich. Eq.) 33, 38–39 (1859) ("It is plain that neither the statute of limitations nor the Act of 1787 applies, in express terms, to the Court of Equity . . . ."); *Mazloom v. Mazloom*, 382 S.C. 307, 319, 675 S.E.2d 746, 752–53 (Ct. App. 2009) (citing *Dixon* for the proposition that the statute of limitations does not apply to actions in equity and noting "[e]quitable causes of action may be barred as untimely, however, by the doctrine of laches").

Defendants maintain section 15-3-530 is broadly drafted and if the South Carolina General Assembly had wished to create an exception for equitable claims involving a contract, obligation, or liability it could have done so. They also focus on the language regarding "obligations" in subsection (1) and argue promissory estoppel imposes an obligation that is subject to the statute or falls under what they term the "catch-all" provision of subsection (5).

The statute of limitations has existed in virtually the same form in South Carolina since this Court's earliest decisions interpreting the statute as applying to actions at law. To date, the General Assembly has not seen fit to alter the statute on this point in response to those decisions. The only subsection that expressly provides that it applies to matters in equity is subsection (7) regarding fraud, which is not at issue here.[3] *See Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003) ("The Legislature is presumed to be aware of this Court's interpretation of its statutes. When the Legislature fails over a forty-

---

[3] *See* S.C. Code Ann. § 15-3-530(7) (2005) (applying a three-year limitations period to "any action for relief on the ground of fraud in cases *which prior to the adoption of the Code of Civil Procedure in 1870 were solely cognizable by the court of chancery*, the cause of action in the case not considered to have accrued until the discovery by the aggrieved party of the facts constituting the fraud" (emphasis added)); *see also* Randolph R. Lowell, et al., *South Carolina Equity: A Practitioner's Guide* 88 (S.C. Bar 2010) ("Unlike many equitable causes of action, an action to set aside a fraudulent conveyance is subject to the statute of limitations rather than the doctrine of laches. An action to set aside a fraudulent conveyance falls within S.C. Code Ann. § 15-3-530(7) . . . ." (footnote omitted)).

year period to alter a statute, its inaction is evidence the Legislature agrees with this Court's interpretation." (citation omitted)).

In addition, if "obligation" is read as broadly as urged by Defendants, it could potentially envelope a multitude of claims, whether at law or in equity, erasing the historic distinctions between the two. In our view, this interpretation would extend the statute's reach much further than was ever intended by the General Assembly. *See Cain v. Nationwide Prop. & Cas. Ins. Co.*, 378 S.C. 25, 29–30, 661 S.E.2d 349, 351–52 (2008) (stating the primary purpose in interpreting statutes is to ascertain the intent of the General Assembly and if the plain reading of a statute lends itself equally to two logical interpretations, the Court must apply the rules of statutory interpretation to discover the General Assembly's intent); *see also Bell v. Mackey*, 191 S.C. 105, 114–15, 3 S.E.2d 816, 820–21 (1939) (observing while there is now but one form of action, a civil action, this change has not altered the inherent distinctions between causes of action as legal or equitable that existed prior to this change, and whatever was previously at law or in equity remains so).

While the dissent asserts only substantive, not procedural, differences should remain between matters at law versus equity, particularly in light of the fact that there is now only one form of civil action under Rule 2, SCRCP, we decline to adopt this view.[4] *Cf. Maynard v. Bd. of Educ.*, 357 S.E.2d 246, 253–54 (W. Va. 1987)

---

[4] The dissent contends none of the cases cited above for the proposition that the statute of limitations does not apply to a court of equity (i.e., *Dixon*, *Parr*, et al.) involve a claim for money damages. However, as the dissent acknowledges, the issue before the Court is novel, and this does not negate the fundamental proposition of these cases. Further, to the extent the dissent advances the view that procedural distinctions between suits at law and in equity should be deemed "meaningless" in light of Rule 2, SCRCP, we disagree. That distinction is one that has been maintained by our General Assembly, and it is not the province of this Court to judicially abolish that legislative directive. Because equity may provide relief where the law does not, strict legal restrictions are not directly applicable. *See generally Kirksey*, 32 S.C. Eq. at 38–39 (observing while the statute of limitations does not apply to a court of equity in express terms, an equitable court can follow the statute as to legal demands by analogy if the circumstances support its application). The dissent's assertion that the distinction is the result of an "historical accident" is unfounded supposition woven from whole cloth. *See* Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. Pa. L. Rev. 909, 914 (1987) ("Although they were

(explaining the fact that the state's civil procedure rules had abolished the procedural distinctions between actions at law and in equity did not mean the distinctions between its various statutes of limitations and the equitable doctrine of laches were also abolished; rather, it is still true that "[l]aches applies to equitable demands[,] where the statute of limitations does not" and, conversely, "statutes of limitations, not laches, apply to demands at law" (alterations in original)). Thus, whether the statute of limitations applies to a claim for promissory estoppel turns on the characterization of the claim as legal or equitable.

## B.      Development and Characterization of Promissory Estoppel

It has been observed that "promissory estoppel" did not enter the general legal lexicon as a labeled doctrine until the early twentieth century. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 149 (Minn. 2001). At that time, Samuel Williston recognized the concept in his treatise on contracts, stating "since [the promisee] relies on a promise and not on a misstatement of fact [as with equitable estoppel], the term 'promissory' estoppel or something equivalent should be used to mark the distinction."[5] *Id.* at 149 n.3 (quoting Samuel Williston & George J. Thompson, *Williston on Contracts* § 139 (rev. ed. 1936)) (first alteration in original); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 51 (2011) (stating a false representation or concealment of material facts is not a required element of

---

complementary, law and equity courts each had a distinct procedural system, jurisprudence, and outlook. The development of contemporary American civil procedure cannot be understood without acknowledging these differences."); *id.* at 934 ("There are, however, critical differences between equity and the Field Code. Discretion and flexibility were at the heart of historic equity practice. But judicial discretion and legal flexibility were anathema to Field and his Commission." (footnote omitted)).

[5] In contrast to promissory estoppel, equitable estoppel is used defensively only and is grounded on a party's misstatement of existing fact; the essence of equitable estoppel is that the party invoking it was misled to his injury. *See Rodarte v. Univ. of S.C.*, 419 S.C. 592, 601, 799 S.E.2d 912, 916 (2017); *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 345, 415 S.E.2d 384, 388 (1992); 31 C.J.S. *Estoppel and Waiver* § 76 (2008). The representation in equitable estoppel "must relate to some present or past fact or state of things as distinguished from mere promises or statements as to the future," as with claims for promissory estoppel. 28 Am. Jur. 2d *Estoppel and Waiver* § 49 (2011).

promissory estoppel, as "the reliance is on the promise rather than a misrepresentation of fact").

American jurisdictions have adopted and applied "a theory of promissory estoppel grounded, in some form, in Section 90 of the Restatements [First and Second] of Contracts."[6]  Eric Mills Holmes, *Restatement of Promissory Estoppel*, 32 Willamette L. Rev. 263, 514 (1996).  "[T]he drafters of the Restatement (Second) made several important changes to § 90 of the Restatement (First) with the intent of making promissory estoppel more available, the role of reliance more prominent, and the remedies awarded to successful litigants more flexible . . . ."  Marco J. Jimenez, *The Many Faces of Promissory Estoppel:  An Empirical Analysis Under the Restatement (Second) of Contracts*, 57 UCLA L. Rev. 669, 669 (2010).  The Second Restatement does not require the promise to induce action or forbearance that is "of a definite and substantial character," and it adds language indicating the remedy "may be limited as justice requires" (e.g., reliance damages may be appropriate instead of expectation damages).[7]  *Id.* at 669–70, 707–10.

In *Higgins Construction Co. v. Southern Bell Telephone & Telegraph Co.*, 276 S.C. 663, 665–66, 281 S.E.2d 469, 470 (1981), this Court noted it had never used the term "promissory estoppel" before, but it had previously applied the doctrine in a 1922 decision.[8]  In *Higgins*, the Court defined "promissory estoppel"

---

[6] "Although Section 90 nowhere mentioned the term 'promissory estoppel,' courts invoking the doctrine often referred to that section to determine the elements of a valid claim."  Phuong N. Pham, Note, *The Waning of Promissory Estoppel*, 79 Cornell L. Rev. 1263, 1265 (1994).

[7] *Compare* Restatement (First) of Contracts § 90 (1932) ("A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.") *with* Restatement (Second) of Contracts § 90(1) (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires.").

[8] *Furman Univ. v. Waller*, 124 S.C. 68, 117 S.E. 356 (1922).

as a doctrine to avoid injustice by providing a remedy for a party's reliance on an otherwise unenforceable promise:

> That doctrine holds "an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice."

*Id.* at 665, 281 S.E.2d at 470 (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966)).

In subsequent cases, our appellate courts enumerated the elements a party must prove to obtain relief under the doctrine of promissory estoppel as follows: (1) the presence of a promise unambiguous in its terms, (2) reasonable reliance upon the promise by the party to whom the promise is made, (3) the reliance is expected and foreseeable by the party who makes the promise, and (4) the party to whom the promise is made must sustain injury in reliance on the promise. *See, e.g., Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 634, 620 S.E.2d 65, 67 (2005); *Woods v. State*, 314 S.C. 501, 505, 431 S.E.2d 260, 263 (Ct. App. 1993); *Powers Constr. Co. v. Salem Carpets, Inc.*, 283 S.C. 302, 306, 322 S.E.2d 30, 33 (Ct. App. 1984).

This Court has stated the basis of the doctrine lies not so much in contract, but rather, it is an application of the equitable principle of estoppel:

> The principle of promissory estoppel is viewed as a substitute for, or an equivalent of, consideration. The basis of the doctrine is not so much one of contract, with a substitute for consideration, but an application of the general principles of estoppel under appropriate circumstances. The circumstances which may trigger the application of promissory estoppel in this case cannot be tortured into the requisite elements of a traditional contract. A contract and promissory estoppel are two different creatures of the law; they are not legally synonymous; the birth of one does not spawn the other.

*Duke Power Co. v. S.C. Pub. Serv. Comm'n*, 284 S.C. 81, 100–01, 326 S.E.2d 395, 406 (1985) (citation omitted); *see also Link v. Sch. Dist. of Pickens Cty.*, 302 S.C. 1,

7, 393 S.E.2d 176, 179 (1990) ("Promissory estoppel and contract are separate and distinct causes of action.").

South Carolina courts have consistently characterized promissory estoppel as an equitable claim. *See, e.g.*, *A&P Enters., LLC v. SP Grocery of Lynchburg, LLC*, 422 S.C. 579, 587, 812 S.E.2d 759, 763 (Ct. App. 2018) (stating, in an appeal from a special referee, that South Carolina courts recognize a remedy in equity for promissory estoppel); *Barnes v. Johnson*, 402 S.C. 458, 469, 742 S.E.2d 6, 11 (Ct. App. 2013) (observing promissory estoppel "is a flexible doctrine that aims to achieve equitable results" and to provide "a remedy where contract law cannot"); *Craft v. S.C. Comm'n for the Blind*, 385 S.C. 560, 564, 685 S.E.2d 625, 627 (Ct. App. 2009) ("Promissory estoppel is equitable in nature. In an action at equity, this court can find facts in accordance with its view of the preponderance of the evidence." (citation omitted)); *West v. Newberry Elec. Coop.*, 357 S.C. 537, 542, 593 S.E.2d 500, 502 (Ct. App. 2004) ("The doctrine of promissory estoppel is equitable in nature." (citing 28 Am. Jur. 2d *Estoppel and Waiver* §§ 1, 55 (2000))); *Satcher v. Satcher*, 351 S.C. 477, 483, 570 S.E.2d 535, 538 (Ct. App. 2002) (observing "[o]ur courts recognize a remedy in equity if the claimant can prove" the elements of promissory estoppel).

It has also been observed that "[p]romissory estoppel is a quasi-contract remedy." *See, e.g.*, *N. Am. Rescue Prods., Inc. v. Richardson*, 411 S.C. 371, 379, 769 S.E.2d 237, 241 (2015) (citing *Higgins*). A "quasi-contract" has been defined as "an obligation imposed by law because of some special relationship between the parties or because one of them would otherwise be unjustly enriched"; it "is not actually a contract *but instead a remedy* that allows the plaintiff to recover a benefit conferred on the defendant."[9] *Quasi-Contract*, <u>Black's Law Dictionary</u> (11th ed. 2019) (emphasis added). It is also termed an "implied-in-law contract." *Id.*

This Court has "used the terms *quantum meruit,* quasi-contract, and contract implied by law as equivalent terms, to distinguish those situations *where equity would aid recovery* from those where law provided the remedy, that is, express

---

[9] *See* 1 Timothy Murray, *Corbin on Contracts* § 1.20, at 86–87 (rev. ed. 2018) (explaining the term "quasi contract" is directly derived from Roman law and refers to an obligation created by law for reasons of justice and suggesting "it might be better not to use the word 'contract' at all" because its use has engendered much confusion in the law).

contracts or contracts implied in fact."[10]  *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000) (emphasis added).[11]  In *Myrtle Beach Hospital, Inc.*, the Court noted there had been confusion in prior case law as to implied-in-fact versus implied-by-law contracts, and it adopted a three-part test "as the sole test for a *quantum meruit*/quasi-contract/implied by law claim," overruling prior decisions employing a different analysis.  *Id.* at 8–9, 532 S.E.2d at 872.

Defendants assert Plaintiff's claim is subject to section 15-3-530 because it "is an equitable quasi-contractual remedy when it seeks money damages."  They contend claims for *quantum meruit* have been subjected to the statute of limitations in South Carolina, citing *Graham v. Welch, Roberts & Amburn, LLP*, 404 S.C. 235, 743 S.E.2d 860 (Ct. App. 2013), and several federal district court decisions, so "the logical extension of the *quantum meruit* precedent mandates that promissory estoppel be subject to the applicable statute of limitations."  Defendants assert this

---

[10] There are two types of implied contracts, and the definitions have been conflated in the jurisprudence of this (and other) states.  *See Stanley Smith & Sons v. Limestone College,* 283 S.C. 430, 434 n.1, 322 S.E.2d 474, 478 n.1 (Ct. App. 1984) ("The unfortunate use of 'implied contract' to connote both true ('implied in fact') and quasi ('implied in law') contracts has led to much confusion.").  "A contract 'implied in fact' arises when the assent of the parties is manifested by conduct, not words."  *Id.*  "A quasi contract, or one implied in law, is no contract at all, but an obligation created by the law in the absence of any agreement between the parties."  *Id.*  The statute of limitations has been interpreted by this Court as applying to implied in fact contracts (true contracts), not implied by law contracts (quasi-contracts).

[11] *But see Corbin on Contracts*, *supra* note 8, § 1.20, at 86 (observing "the term quantum meruit is sometimes used as the equivalent of the term quasi contract" although "it is not an equivalent term"); *Quasi-Contract*, Black's Law Dictionary (11th ed. 2019) (defining quasi-contract and stating because claims for unjust enrichment did not belong to either the category of contract or tort, they came to be called quasi-contract; "[s]ome of them were originally characterized as being in *quantum meruit* (as much as he deserved), a form of action used for claims [for] payment for services," and this term "is sometimes used inexactly as a synonym for the more general term *quasi-contract*, which refers to any money claim for the redress of unjust enrichment" (quoting E. Allan Farnsworth, *Contracts* § 2.20, at 103 (2d ed. 1990))).

Court has the power to apply section 15-3-530 to claims of promissory estoppel even if the claim is not specifically addressed in the statute.

In *Graham*, the appealing party did not dispute the application of the statute of limitations to all of his claims, which included unjust enrichment, so neither the application of the statute nor promissory estoppel was an issue before the court of appeals. As a result, *Graham* cannot be "extended" to hold the statute of limitations is applicable to claims of promissory estoppel, as urged by Defendants.[12] Further, the federal district court decisions cited by Defendants are unreported decisions concerning *quantum meruit* or unjust enrichment, distinguishable claims, and none cite reported decisions (other than *Graham*) from the South Carolina appellate courts to directly support their determinations.[13] Thus, the district court's decisions do not aid this Court in its analysis of promissory estoppel.

Describing promissory estoppel as quasi-contractual is not dispositive of the issue before us. Equitable estoppel has also been described by this Court as quasi-contractual, but it is a defensive measure to which the statute of limitations undoubtedly does not apply. *See generally Rodarte v. Univ. of S.C.*, 419 S.C. 592, 604, 799 S.E.2d 912, 918 (2017) ("We agree with the Supreme Court of Rhode Island that *'quasi-contractual remedies such as equitable estoppel* are inapplicable when the parties are bound by an express contract.'" (emphasis added) (citation omitted)).

A request for monetary relief should not be viewed in isolation to convert what is otherwise an equitable claim to a legal claim. *See generally Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 865–66 (Colo. App. 2008) ("Even though a plaintiff seeks to recover money damages, the plaintiff is not entitled to a jury trial if the essence of the action is equitable in nature. *Snow Basin, Ltd. v. Boettcher &*

---

[12] Defendants correctly note the statute of limitations has been applied to *quantum meruit* in several cases, but *quantum meruit* is a distinguishable claim and the propriety of the holdings as to *quantum meruit* is not currently before the Court.

[13] *See, e.g.*, *Crossroads Convenience, LLC v. First Cas. Ins. Grp.*, No. 1:15-CV-02544-JMC, 2017 WL 1135132 (D.S.C. Mar. 27, 2017); *Brown v. Goodman Mfg. Co., L.P.*, No. 1:13-CV-03169-JMC, 2015 WL 1006319 (D.S.C. Mar. 5, 2015); *Wells Fargo Bank, N.A. v. Carter*, No. 9:14-127-SB, 2014 WL 11034776 (D.S.C. July 22, 2014); *Magwood v. Heritage Tr. Fed. Credit Union*, No. 2:09-2751-DCN-BM, 2010 WL 4604661 (D.S.C. June 4, 2010), *adopted*, No. 2:09-2751-RMG-BM, 2010 WL 4622454 (Nov. 4, 2010).

*Co.,* 805 P.2d 1151, 1154 (Colo. App. 1990) (money damages sought on promissory estoppel claim)."); *Kim v. Dean*, 135 P.3d 978, 981 (Wash. Ct. App. 2006) ("Under the historical test, Washington courts determine the overall nature of an action by 'look[ing] to see whether the claims in question were within the exclusive jurisdiction of the equity courts when the state constitution was adopted in 1889.'" (alteration in original) (citation omitted)).

Monetary relief is not available at law for an unenforceable promise. Thus, monetary relief is not properly characterized as legal if the source for its recovery lies solely in a principle of equity. The claim—and the remedy—are still equitable because the recovery does not exist at law but is provided solely to avoid injustice in a court of equity. In this case, if Defendants had not sold the company, Plaintiff would be seeking transfer of the promised equity shares. The relief awarded is ultimately an equitable matter for the court to determine, not a jury. The fact that a court might have to fashion some other equitable relief for the unmet promise (assuming Plaintiff is able to establish his claim), does not lessen its overall nature as equitable. *See generally* 28 Am. Jur. 2d *Estoppel and Waiver* § 51 (2011) (stating "[a] trial court retains broad discretion under promissory estoppel to fashion whatever remedies or damages justice requires"). As a result, equitable defenses such as laches, not the statute of limitations, apply.

Defendants' assertion that the promissory estoppel claim could exist "in perpetuity" in the absence of invoking the statute of limitations is wholly without merit, as laches will prevent the pursuit of stale claims. *See Kirksey v. Keith*, 32 S.C. Eq. (11 Rich. Eq.) 33, 39 (1859) (observing the statute of limitations may be applied by analogy to matters of account and courts of equity will refuse to afford relief to stale demands based on considerations of public policy and the difficulty of providing justice when the transaction has become obscured by time and evidence is lost; thus, the general rule is "where conscience, good faith and reasonable diligence are lacking, a Court of Equity is passive and does nothing; and therefore from the beginning of Equity Jurisdiction, there was always a limitation of suit in that Court" (citation omitted)).

## IV. CONCLUSION

Based on the foregoing, we answer the certified question in the negative. The statute of limitations in S.C. Code Ann. § 15-3-530 does not apply to a claim for promissory estoppel.

**CERTIFIED QUESTION ANSWERED.**

**KITTREDGE, HEARN and JAMES, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I would apply the statute of limitations to all actions for money damages. For this reason, I respectfully dissent.

The procedural differences between actions at law and suits in equity arose centuries ago for accidental reasons hardly known to any modern South Carolina lawyer or judge. Not long after the already outdated distinctions arrived in the new world, states began refusing to recognize them. In New York in 1848, for example, the legislature provided in the new "Field Code,"[14]

> The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished; and there shall be in this state, hereafter, but one form of action, for the enforcement or protection of private rights and the redress or prevention of private wrongs, which shall be denominated a civil action.

Charles E. Clark, *The Union of Law and Equity*, 25 Colum. L. Rev. 1, 1 (1925) (quoting N.Y. Laws 1848, c. 379 § 62).

The movement to do away with meaningless differences between actions at law and suits in equity continued into the twentieth century. *See* Edward R. Taylor, *The Fusion of Law and Equity*, 66 U. Pa. L. Rev. 17 (1917). Discussing his view of how an "organized, civilized society" should approach a meaningful unity of the divergent systems, this author wrote, "Until we have taken steps to achieve that [unity] we are simply walking round and round like one lost." *Id.* at 17; *see also* Charles T. McCormick, *The Fusion of Law and Equity in United States Courts*, 6 N.C. L. Rev. 283, 285 (1927) ("Any separation of the stream of equity from the main channel of legal administration is today seen to be unjustifiable as an administrative device and explainable only as a historical survival from an era of multitudinous separate courts.").

The unification of the two systems—particularly the elimination of their silly distinctions—hit its full stride in 1938 with Rule 2 of the Federal Rules of Civil Procedure. Rule 2 then provided, "There shall be one form of action to be

---

[14] I concede the irony that I cite the origin of code pleading in the United States in support of simplicity and uniformity.

known as 'civil action.'" Rule 2 now provides, "There is one form of action—the civil action." Fed. R. Civ. P. 2. South Carolina adopted Rule 2 in 1985. "There shall be one form of action to be known as 'civil action.'" Rule 2, SCRCP.

There remain substantive differences between law and equity, but the differences remain because the differences make sense. As Professors Wright, Miller, and Steinman stated, "The Rules have not abrogated the distinction between equitable and legal remedies," but "the procedural distinctions have been abolished." 4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, FEDERAL PRACTICE AND PROCEDURE § 1043 n.1 (4th ed. 2015). These procedural distinctions were abolished because there was no reason to have the distinctions in the first place.

There is likewise no reason to draw the distinction the majority makes in this case. Whether labeled an action for promissory estoppel in equity or breach of contract in law, Thomerson's action is one action in which he must prove the promise, a breach, and his resulting damages. The consideration he must prove in the law action is no different from the reliance he must prove in the equity action. There is simply no substantive difference arising from the label he puts on the claim.

The majority cites what looks like an impressive string of cases holding the statute of limitations does not apply in equity cases going all the way back to *Kirksey v. Keith* in 1859. Not one of those cases, however, involves an action for money damages. The majority correctly calls the question before us "novel" because it is a new question, different from any question we have answered before. When we decide new questions, we should not be too quick to rely on old answers to different questions, nor should we rely at all on senseless, long-discarded procedural fictions that arose by historical accident. We should answer novel questions on a substantive basis, or as the majority states, "based on [our] assessment of which answer and reasoning would best comport with the law and public policies of the state as well as the Court's sense of law, justice, and right." *See Buchanan v. S.C. Prop. & Cas. Ins. Guar. Ass'n*, 424 S.C. 542, 551-54, 819 S.E.2d 124, 129-30 (2018) (Few, J., concurring) (a majority of this Court explaining how we should approach "novel questions of law not governed by statute or controlled by prior decision").

I would not answer the certified question by merely reciting the answer we used to give in different cases based on procedural distinctions that should no longer exist.

> How absurd for us to go on until the year [2020] obliging judges and lawyers to climb over a barrier which was put up by historical accident in 14th century England . . . .

T. Leigh Anenson, *Treating Equity Like Law: A Post-Merger Justification of Unclean Hands*, 45 Am. Bus. L.J. 455, 455 (2008) (quoting Zechariah Chafee Jr., *Foreword to Selected Essays on Equity* iii, iv (Edward D. Re ed., 1955)).

I respectfully dissent.